523 P.2d 66
**STATE of Arizona, Appellee,**
v.
**Phillip Lyle GONZALES, Appellant.**
**No. 2587.**

Supreme Court of Arizona,
En Banc.
June 10, 1974.
Rehearing Denied Sept. 17, 1974.

**40**

Gary K. Nelson, Atty. Gen., by Peter M. Van Orman and Stanley L. Patchell, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

HAYS, Chief Justice.

Defendant Phillip Lyle Gonzales was charged with murder by torture, rape, and grand theft of an automobile. The victim, although an adult, was a mute with the mental capacity of a five-year-old child. The defense was insanity. After a trial to the court, without a jury, the defendant was found guilty on all counts and was sentenced. He appealed and asserts some eleven questions for our determination.

## 1 & 2 EQUAL PROTECTION AND SELF-INCRIMINATION

■ Appellant argues that because he was an indigent, it was necessary for him to seek appointment of a psychiatrist pursuant to A.R.S. § 13–1621.01. It is argued that if he had been able to secure services of a psychiatrist on a private basis, the trial court and the state would not have been entitled to the psychiatrist's report. By furnishing the court and the state a copy of the report, the appellant contends he was denied equal protection of the laws. The answer to appellant's argument, as to the court, is that when the trial judge is the trier of facts, the presumption is that such trial judge disregards all inadmissible evidence in reaching his decision. State v. Fredrico, 104 Ariz. 157, 449 P.2d 936 (1969).

■ As to appellant's assertion that the giving of the report to the state denied him equal protection of the laws, it is our position that the statutory scheme of permitting the appointment by the court of a psychiatrist for this defendant and requiring that the report be submitted to the court and the prosecution, did not place a greater burden upon him and deny him equal protection.

■ Appellant further argues that permitting the state to obtain pretrial information as to the results of psychiatric examinations of defendant without the state's being held to a reciprocal pretrial discovery, is a denial of due process. Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), and Wardius v. Oregon, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed. 2d 82 (1973), are cited as supporting this position.

The state, in the instant case, had not secured a mental examination of the defendant, nor is there anything in the record to indicate that if such examination were to be obtained by the state, the defendant would have been denied such report. There was no denial of reciprocal discovery as in the cases cited by defendant. If defendant had, with his own funds, secured the services of a psychiatrist, that report would have been discoverable by the state. This position is now with specificity set forth in Rule 11.4, Arizona Rules of Criminal Procedure, 1973, 17 A.R.S.

■ It was also defendant's position that revealing the contents of the report to the prosecution and to the trier of facts violated his Fifth Amendment privilege against self-incrimination. The report did not contain a summary of defendant's statements concerning the actual offense, nor did it contain any factual statements of defendant nor a confession. No incriminating evidence was contained in the report.

The test is whether a physician-patient relationship exists. A doctor who does not treat a prisoner, but only examines him in order to testify about his condtion, may testify about it. State v. Shaw, 106 Ariz. 103, 471 P.2d 715 (1970).

Defendant argues that an accused cannot be required to claim one constitutional right only by giving up another. The accused did not have a constitutional right to the appointment of a psychiatrist. Such right was given by statute. In addition, the defendant chose to have the psychiatrist appointed. In McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L. Ed.2d 711 (1971), the United States Supreme Court held:

"The criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow. McMann v. Richardson, 397 U.S. 759, at 769, 90 S.Ct. 1441, at 1448, 25 L.Ed.2d 763, at 772. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose. The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved. . . ." 402 U.S. at 213, 91 S.Ct. at 1471.

In State v. Karstetter, 110 Ariz. 539, 521 P.2d 626 (1974), we held that when the defendant refuses to be examined by the state's psychiatrist, such refusal can be indicated to the jury. Although the state, in the instant case, did not request the appointment of a psychiatrist, if such a request had been made, the defendant could have refused to answer any questions because the answers might incriminate him. If defendant's psychiatrist's report had not been given to the state, it would have been in the unfair position of being unable to rebut evidence to be introduced by the defendant.

## 3 REPORT OF STATE EXPERT WITNESS

The state's psychiatrist did not examine the appellant and made no written report of his opinion. Prior to trial, the prosecutor had supplied the doctor with a hypothetical question based on what the prosecutor thought the facts would be. This question was subject to change to conform to the evidence. The prosecutor received the oral response just before or on the day the trial commenced and did not supply it to defendant. Prior to trial, the court had made the following order:

"FURTHER ORDERED that the State reveal names of medical experts to testify for the purpose of expressing opinions of sanity of the defendant.

"In the event the State selects [sic] to call psychiatrists to testify and give opinion as to the sanity of the defendant,

"IT IS ORDERED that the State call that to the Court's attention and let the Court know what the opinion is and then it will be determined whether or not it is discoverable prior to trial."

Defendant argues that because the defendant had waived a jury, this amounted to an order that the court would be advised of the evidence outside the trial. We find no merit in this contention. It is presumed that the trial court disregards all inadmissible evidence in reaching his decision. State v. Garcia, 97 Ariz. 102, 397 P.2d 214 (1964).

Appellant also alleges that the failure of the state to furnish him with its doctor's oral report constituted reversible error. The question posed to the doctor was not based on evidence introduced at the trial; it was only an opinion as to facts the prosecutor thought might be presented. The state psychiatrist testified at the trial and was cross-examined by defendant. The discovery urged by the appellant in this case is not required under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

## 4 MOTION TO QUASH INDICTMENT

A criminal complaint was filed charging defendant with murder. Preliminary examination was set but was vacated when defendant asked for an examination to determine his competency to stand trial under A.R.S. § 13–1621. Defendant was found competent and the preliminary examination was reset. However, before the preliminary examination, the state presented the murder charge and three other charges to the grand jury which returned an indictment. On motion of the state, the justice court dismissed the complaint.

Appellant moved to quash the indictment on the grounds that once the state has elected to proceed by complaint before a magistrate, it cannot proceed by indictment by a grand jury. It is argued that once the justice court acquired jurisdiction, it retained it to the exclusion of all others. It is further argued that the state could not obtain a dismissal of the complaint *ex parte*. Notice was not given to the defendant of the motion to dismiss.

In Carter v. State of Arizona, 5 Ariz. App. 210, 424 P.2d 858 (1967), this question was answered by our Court of Appeals:

> "The question raised in this appeal is whether the Maricopa County Superior Court was deprived of jurisdiction when a criminal complaint was filed and later dismissed after a grand jury indictment was returned, based on the same charges. We must answer this in the negative. Dismissal of the criminal complaint does not bar subsequent prosecution for the same offenses. State v. Byrd, 94 Ariz. 139, 382 P.2d 555 (1963). Article 2, § 30 of the Arizona Constitution, A.R.S. provides that prosecution may be by indictment or information and the cases holding that prosecution may be by either method are numerous. State v. McClendon, 101 Ariz. 285, 419 P.2d 69 (1966); Burke v. Superior Court, 3 Ariz.App. 576, 416 P.2d 997 (1966)."

A proceeding before an examining magistrate is not a judicial trial, and dismissal of a complaint is not an absolute bar to further prosecution. State v. Elling, 19 Ariz.App. 317, 506 P.2d 1102 (1973). Nor is the proceeding before the grand jury a judicial trial.

In Wilson v. Garrett, 104 Ariz. 57, 448 P.2d 857 (1969), we held that when a criminal complaint had been dismissed by a magistrate, after a preliminary examination, the state is not foreclosed from presenting the matter to a grand jury. When, as in this case, a preliminary examination has not been held, we can find no error in presenting the case to the grand jury.

As to appellant's contention that it was error to dismiss the complaint, without notice to him, we cannot agree. The defendant was in no way prejudiced by such dismissal. The state has the right to proceed by either indictment or information (Ariz.Const. art. 2, § 30 A.R.S.). The appellant has no right to choose which method is used.

## 5 DID THE STATE PROVE RAPE?

The appellant asserts that the charge of rape is based on speculation. The following is the trial court's statement at the conclusion of the trial.

> "The argument as to Count II of the indictment, the crime of rape, first degree, is one which one can listen to but when you home in on the really important evidence in this case you have got to conclude it is unmistakable that the original motive was sexual lust. The stripping of her clothes, the terrible struggle, the laceration to the entrance to her vagina, the blood on the defendant's underpants, the semen on his underpants—'But Your Honor, there was no semen or sperm within her'—I don't suppose there was. That is not necessary to prove forcible rape. This murder was committed within the scope of

the law as it is written as a torturous rape murder with both premeditation and deliberation."

\*    \*    \*    \*    \*    \*

"[T]he proof of penetration is beyond reasonable doubt. The only question is what penetrated this victim on Count II. The only suggestion of anything but a human penis is a half pint gin bottle with what according to one witness looks like—or maybe two witnesses—appears to be blood. I don't know whether it is blood or not, but I don't believe he took her out in the desert to perform that act with a bottle of gin. But to support my conclusion it was not the gin bottle is the location in which it was found. The original attack at scene 3, on that exhibit, is where that bottle was located. It is not reasonable to conclude that the bottle was used to penetrate her vagina at that location. If it had been done, it would have been scene 2 or scene 1. It is therefore the decision and verdict of this Court that the defendant is guilty in Count II to the indictment of rape, a felony, first degree."

There is evidence to sustain the findings of the trier of fact.

## 6   GRAND THEFT

■■■ Appellant argues that the charge of grand theft (automobile) was not supported by the evidence.

Defendant took the truck in question, without the owner's permission, and drove it to Glendale. The truck had mechanical problems and defendant left it on the street. The evidence also established that appellant had been told to stay in his room because a sheriff's deputy was on his way to talk with him. Appellant now argues that he took the truck to find a policeman to report a fight with his girlfriend. There is no proof of this fact as the defendant did not testify.

Defendant's actions and statements to the police could be taken by the trier of fact to infer guilty knowledge.

The evidence establishes beyond a reasonable doubt that the appellant took the truck with an intent to permanently deprive the owner of his property.

## 7   MURDER BY TORTURE

■■■ Appellant contends that there was no foundation for the trial court's judgment that the homicide was committed by means of torture. It is argued that the state must prove that the death was the result of the torture and that defendant intended to inflict torture. In State v. Brock, 101 Ariz. 168, 416 P.2d 601 (1966), this court held:

"Murder is perpetrated by torture when the assailant intends to cause cruel suffering for the purpose of revenge, extortion, persuasion, or to satisfy some other untoward propensity. People v. Daugherty, 40 Cal.2d 876, 256 P.2d 911, cert. den. 346 U.S. 827, 74 S.Ct. 47, 98 L.Ed. 352. There need not be an intent to cause death, but there must be a separate intent to cause extreme pain and suffering for one of the enumerated purposes. People v. Anderson, 63 Cal.2d 351, 46 Cal.Rptr. 763, 406 P.2d 43; People v. Tubby, 34 Cal.2d 72, 207 P.2d 51; Townsend v. People, 107 Colo. 258, 111 P.2d 236. It is not enough that defendant intended to cause extreme pain and suffering; there must also be evidence that he did so for revenge, extortion, persuasion or some other untoward propensity. Townsend v. People, supra; People v. Heslen, Cal., 163 P.2d 21 modified 27 Cal.2d 520, 165 P.2d 250. Furthermore, the death must have been caused by the torture. State v. Folk, 78 Ariz. 205, 277 P.2d 1016."

The attack of the victim and injuries to her occurred at least at three different locations, and there were signs of a struggle and blood at each location, showing that the victim was conscious and the injuries occurred over an extended period of time. The nature and extent of the victim's injuries and the evidence at the three locations are sufficient to establish that appellant intended to cause extreme pain and suffering because of some "untoward propensity." The victim's pubic hair was burned off, the inside of her thighs were burned and her

head hair was burned or torn out. There were large bruises and injuries covering her forehead, right cheek, chin, left eye, right ear, neck, abdomen, and hip. There were wounds which were consistent with human biting. Five ribs were broken. There were injuries to the neck consistent to strangulation with a belt. A belt with blood on it was found near the body. It was the opinion of Dr. Jarvis that the victim died as a result of subdural injury to the brain due to a blunt force injury of the head. He also testified that injuries to the various areas of the body other than the head could have caused the subdural hemorrhage and death. The intent to inflict suffering may be inferred from the condition of the victim's body. People v. Washington, 71 Cal.2d 1061, 80 Cal.Rptr. 567, 458 P.2d 479 (1969). No other conclusion can be drawn from the evidence in this case but that the appellant intended to cause extreme pain and suffering from some "untoward propensity." An additional fact that strengthens our belief that there was sufficient evidence to establish murder by torture was the fact that the attack was like an attack on a child, as the victim had the mental faculties of a five-year-old child.

## 8. ADMISSION INTO EVIDENCE OF DEFENDANT'S CLOTHING

Early in the morning after the murder, defendant was arrested by the Glendale, Arizona, police for public drunkenness. When he was booked at the jail, appellant's clothing was taken from him. Later in the early morning, the Glendale police were advised by the Maricopa County Sheriff's office that appellant was a suspect in this case. The Sheriff's office asked that appellant's clothing be impounded. Appellant objected to the admission of the clothing into evidence on the grounds that it was illegally seized by the Phoenix police from the Glendale police without a search warrant. We find no merit in this argument. The clothing was lawfully in the hands of the Glendale Police Department and appellant had not requested its return. See United States v. Edwards, 415

U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). Appellant cites United States v. Birrell, 2 Cir., 470 F.2d 113 (1972), to support his argument. The facts in *Birrell* are different. In *Birrell,* after certain papers had been legally seized by the police of the City of New York from the apartment of a victim of a homicide, defendant asked for their return. However, the New York City Police turned the papers over to an agent of the Internal Revenue Service. The Court held that "the case must be determined on the basis of its peculiar facts." In a concurring opinion, it was pointed out that because of defendant's demand for return of the papers they were not legally in the hands of the police.

In addition, the City of Glendale, the City of Phoenix, and Maricopa County are all subdivisions of the State of Arizona. Evidence in the hands of the law enforcement officers of one subdivision of the state may be made available to law enforcement agencies of another subdivision of the state without a warrant.

## 9 INSANITY DEFENSE

Appellant asserts that the state failed to prove beyond a reasonable doubt that the defendant knew the nature and quality of his acts and that he knew that what he was doing was wrong. Burgunder v. State, 55 Ariz. 411, 103 P.2d 256 (1940). Temporary insanity as a result of voluntary intoxication was claimed as a defense. This claim is based on the following testimony of Dr. Bendheim, defendant's psychiatrist:

> "My diagnosis is one of chronic alcoholism at times complicated by illicit drug consumption and an inadequate personality structure and I also stated that the degree of alcoholic intoxication in all probability has reached proportions on occasions which should be considered psychotic, which should be considered depriving him of the power to form an intent."
>
> \* \* \* \* \* \*
>
> "It is extremely questionable that he was able to differentiate right from wrong and to adhere to the right at the

time of the alleged offense, providing that the history, as I obtained it from the man himself as well as from the records made available to me, is correct."

Throughout the doctor's testimony and report, he indicated that his opinion as to sanity was based upon defendant's degree of intoxication. His opinion as to the degree of intoxication was based upon defendant's statements to him and other reports. The doctor did not see the defendant for some time after the crime and had no personal knowledge of defendant's condition.

■ In view of all the evidence presented at the trial, the trial court was justified in finding that the defendant's claim of intoxication was not supported by the evidence. The trial court found:

" . . . He fled the scene. . . . [H]is consciousness of wrongdoing was demonstrated by statements to several people later."

\* \* \* \* \* \*

"The argument that he was temporarily insane is without merit at all. He may have had schizophrenic tendencies in years past, there is no evidence before this Court that he is now in fact a schizophrenic, mentally ill person. We know he had something to drink that day, but we know much better than that when he demonstrated his motor capacity to move around in the darkness of night and commit these misdeeds, and yet later wash his hands, sit in a bar, have a beer, talk intelligently to numerous people. But most important of all, he has knowledge and had and demonstrated his consciousness of guilt on several occasions several hours after this occurred. He could not have been in a blackout and demonstrated that consciousness of guilt."

The evidence in this case was not such as to show that the defendant, because of his mental condition, was not conscious of his acts.

Even if it had been established that defendant was intoxicated, Dr. Haessler, the state's psychologist, testified that the defendant was capable of forming the intent element necessary to prove the crimes charged. State v. Contreras, 107 Ariz. 68, 481 P.2d 861 (1971).

### 10 OPINION OF CRIMINALIST

Appellant contends that it was error to permit Joe Collier, State Criminalist, to testify in regard to appellant's claim of intoxication.

■ Mr. Collier testified as to the effects of alcohol upon the body and the amount of alcohol required to produce objective symptoms of impairment of body functions. He was asked if he had heard testimony presented by Dr. Bendheim. When he said he had, he was asked the following questions:

"Q And based upon all of these facts that you have heard before you, do you have an opinion as to whether or not the accused was intoxicated, under the influence of alcohol, between the hours of 8:00 p. m. and 10:15 p. m. on the 20th of January?

"A Yes, sir, I do.

"Q What is that?

"A It is my opinion that there are no symptoms or signs of alcoholic influence between those times."

Appellant argues that this is a finding of fact by a witness on an essential fact in issue on which there was conflicting evidence. However, no objection was made when the above question was asked. Failure to object to an offer of evidence is a waiver of any ground of complaint against its admission. State v. Favors, 92 Ariz. 147, 375 P.2d 260 (1962). The defendant was put on notice of Mr. Collier's proposed testimony by a supplemental answer to defendant's motion for bill of particulars filed prior to trial. He voiced no objection to the testimony.

### 11 PRETRIAL DISCOVERY

Appellant complains that throughout the trial the prosecutor offered certain physical exhibits which were not furnished to defendant for examination. However, the

only exhibit specifically referred to by defendant was a small gin bottle which was offered in evidence by the state. In a supplemental answer to defendant's motion for bill of particulars filed prior to trial, the bottle is referred to, as is the fact that it was found approximately fifteen yards south of the victim's clothing. If defense counsel was surprised by the bottle's appearing at trial, he must not have read that pleading.

The rather "shotgun" contention of the state's failure to comply with the motion for bill of particulars just isn't borne out by the record. A reading of the state's answer to the bill of particulars, along with the two supplemental answers, refutes the contention. The trial court's order granting the motion for bill of particulars went far beyond the requirements of the Rules of Criminal Procedure then in effect and the state complied.

Judgments of conviction and sentences affirmed.

CAMERON, V. C. J., and STRUCK-MEYER, LOCKWOOD and HOLOHAN, JJ., concur.