573 P.2d 882

**STATE of Arizona, Appellee,**

v.

**Kraig Steven SCHUTTE and James William DeMichele, Appellants.**

**No. 1 CA–CR 2070.**

Court of Appeals of Arizona, Division 1, Department B.

Oct. 4, 1977.

Rehearing Denied Dec. 27, 1977.

Review Denied Jan. 24, 1978.

---

Bruce E. Babbitt, Atty. Gen. by Crane McClennen, Teresa S. Thayer, Asst. Attys. Gen., Phoenix, for appellee.

Hooker, McDonald & Morgan by Robert J. Hooker, Tucson, for appellants.

OPINION

FROEB, Chief Judge.

Appellants, James W. DeMichele and Kraig S. Schutte, bring this appeal from convictions for transportation of marijuana in violation of A.R.S. § 36–1002.07 and sentences of not less than five years nor more than six years in the Arizona State Prison.

On October 15, 1975, at 12:15 A. M., a United States Customs Service radar operator located an unidentified aircraft flying in Mexico toward the United States border. He directed a Customs patrol plane to intercept. The patrol plane did intercept the unidentified aircraft, which was flying without navigation lights. The patrol plane followed it to Red Lake, a dry lake some 30 miles north of Kingman, Arizona, where it landed. Customs officers in the patrol plane saw a pickup camper or a station wagon drive up to the unidentified aircraft and turn off its lights. The unidentified aircraft took off after approximately 15 minutes and disappeared. Meanwhile, another patrol plane flew over and the pilot observed two vehicles moving on the ground near the dry lake.

Customs officials directed Officers Robert Rathbone and David Gumaer, Mohave County Sheriff's deputies, to the Red Lake area and informed them that a vehicle was northbound without lights. As the officers drove northward on Hackberry Road, a gravel road passing on the north side of Red Lake, they saw rear reflectors of an unlighted vehicle about a quarter of a mile ahead of them, moving at 70 to 90 miles per

hour. The officers pursued at the same speed but lost sight of the other vehicle. When they reached the intersection of Hackberry and Pierce Ferry Roads, they saw a pickup truck camper, with its headlights on, about one-half mile southwest of the intersection, moving toward them. The evidence was conflicting as to whether this was the same vehicle the officers had been pursuing. Officer Rathbone testified at the suppression hearing that the vehicle they had been following went past the intersection but made a U-turn and headed back to the intersection after proceeding a short distance on Pierce Ferry Road. Although the officers partially blocked the road and displayed a flashing red light, the pickup truck accelerated past them. The pickup truck left the road and went out across the open desert. The officers pursued on foot and located the pickup truck. Its occupants had abandoned it, leaving the back door open. An inspection of the inside revealed several sacks containing brick-shaped objects and a faint smell of marijuana. Appellants were arrested the next day after an extended search in the desert. Officer Gumaer conducted an inventory search of the pickup after it was towed to Kingman and found 832 pounds of marijuana.

Appellants were indicted for transportation of marijuana and possession of marijuana for sale in violation of A.R.S. §§ 36–1002.07 and 36–1002.06, respectively. After an unsuccessful motion to suppress evidence seized in the pickup truck, appellants waived a jury trial and submitted the case to the court on suppression hearing testimony, written reports, and evidence in the record. The court found appellants guilty on both counts. The trial court later dismissed the charges of possession of marijuana for sale and sentenced appellants for transportation of marijuana.

Appellants present three grounds for reversal.

## THE MOTION TO SUPPRESS

Appellants argue that the motion to suppress should have been granted because (1) there was no rational suspicion justifying the initial attempt to detain appellants, (2) there was no probable cause for the arrest, and (3) the warrantless search of the pickup was illegal.

■ It is well settled that a brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information may be reasonable in light of the facts known to the officer at the time. *State v. Lelevier*, 116 Ariz. 37, 567 P.2d 783 (filed July 21, 1977); *State v. Hocker*, 113 Ariz. 450, 556 P.2d 784 (1976); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). It is equally settled that probable cause need not exist at the inception of an investigation. *State v. Gunter*, 100 Ariz. 356, 414 P.2d 734 (1966). The totality of circumstances surrounding the incident must show, however, that the police conduct was reasonable. *State v. Fortier*, 113 Ariz. 332, 553 P.2d 1206 (1976).

> While it is true that a temporary investigative detention is allowed under certain circumstances, these circumstances must be "such as to distinguish the activity of the detained person from that of any other citizen" and must be based on an "objective perception of events rather than the subjective feelings of the detaining officer." In order to justify the intrusion, the state must be able to point to specific and articulable facts, which may be combined with rational inferences from those facts. Thus, even in the absence of bad faith, detention based on a "mere hunch" is illegal. There must be a reasonable suspicion by the law enforcement officer that "some activity out of the ordinary" is or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to crime. *State v. Hocker*, 113 Ariz. at 457, 556 P.2d at 791.

■ When the trial court has denied a motion to suppress, we will not override its findings unless there is a clear abuse of discretion. *State v. Boyer*, 106 Ariz. 32, 470 P.2d 439 (1970). The evidence, viewed in a light most favorable to upholding the trial

court, indicates that the officers had reasonable grounds to suspect that an unidentified aircraft landed contraband on a dry lake bed and that a vehicle met it. The officers observed a pickup truck leave the area at 70 to 90 miles per hour, without lights, at approximately 2:30 in the morning on a two-lane gravel road located in a remote, sparsely populated area. We believe these are specific and articulable facts which support a reasonable suspicion that the pickup truck had participated in criminal activity.

Nevertheless, appellants point to "serious factual discrepancies" which they argue should negate this reasonable suspicion. Neither Officer Rathbone nor Officer Gumaer mentioned in their written reports a U–turn by the pickup truck before it approached the awaiting officers on Pierce Ferry Road. Appellants contend that Officer Rathbone's testimony at the suppression hearing is the sole support for the claimed U-turn and that his testimony should have been rejected by the trial court because it was not believable. While there is evidence that the U-turn was not made, the trial court was entitled to believe Officer Rathbone's version. The "factual discrepancies" described by appellants relate solely to credibility and did not require the court to reject Rathbone's testimony. Moreover, even without the U-turn testimony, we think a reasonable suspicion existed which would justify an investigative stop of the vehicle as it proceeded toward the intersection.

The next question relates to the arrest of appellants. When the officers attempted to stop the pickup at the intersection, their failure to stop and their excursion into the desert gave the officers probable cause to arrest. *See State v. Wronko,* 26 Ariz.App. 263, 547 P.2d 1063 (1976). Appellants do not contend that their eventual arrest was without probable cause. They argue that there was no probable cause to arrest when the officers tried to stop them at the intersection. Since we have found that the circumstances justified stopping the vehicle, it is irrelevant whether proba-

ble cause for arrest existed, since appellants were not then arrested. We find the contention without merit.

Next appellants claim that the search of the pickup and the seizure of the marijuana without a warrant was illegal. The warrantless search of an abandoned vehicle is reasonable and justified under circumstances present here. *State v. Childs,* 110 Ariz. 389, 519 P.2d 854 (1974). *See also State v. Scarborough,* 110 Ariz. 1, 514 P.2d 997 (1973); *State v. Ruiz,* 109 Ariz. 437, 511 P.2d 172 (1973), and *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). After this the pickup was brought to Kingman and an inventory search of the vehicle revealed a large quantity of marijuana. The basic elements which will support a warrantless inventory search of an automobile are: (1) the law enforcement officials must have lawful custody or possession of the automobile, and (2) they must have acted in good faith in conducting the inventory and must not have used the inventory procedure as a subterfuge for a warrantless search. *In re One 1965 Econoline,* 109 Ariz. 433, 511 P.2d 168 (1973). The law enforcement officials clearly had lawful custody of the pickup since it was abandoned. It is also clear that under the circumstances the inventory of the pickup was reasonable. When the officers first inspected the abandoned pickup in the desert, they could see a large plastic bag filled with many small plastic bags. They also detected the odor of marijuana. Thus the subsequent inventory search in Kingman was not conducted to find contraband but to inventory and to preserve the contraband already found within the pickup.

Appellants contend that *State v. Sauve,* 112 Ariz. 576, 544 P.2d 1091 (1976) required suppression of the seized evidence. We disagree. In *Sauve* the automobile was unoccupied, parked on private property, and at the time not being used for any illegal purpose. Here the pickup was abandoned in the desert, directly involved in the commission of the crime, and presumably subject to the vehicle forfeiture provisions in

A.R.S. § 36–1041. Considering the large amount of contraband in the pickup and the seizure of the pickup far from the road and many miles from Kingman, it was reasonable to delay the inventory search of the pickup until a suitable storage place was available.

■ A final contention relating to the suppression of evidence involves boots belonging to appellants. The boots were legally taken into custody when the appellants were arrested. No further warrant was needed. *State v. Gonzales*, 111 Ariz. 38, 523 P.2d 66 (1974).

## THE AGREEMENT CONCERNING POST–CONVICTION RELEASE

After the court denied the motion to suppress, appellants decided to submit the issue of guilt to the court on the record. The decision to do so was based in part upon an oral agreement related to the trial court as follows:

MR. HOOKER (Attorney for Appellants): As part of that agreement with the County Attorney, the County Attorney has agreed not to oppose a setting of appellate bonds in the event that the defendants are found guilty and if proper notice of appeal is filed, and on that issue we have been talking in the neighborhood of $1500 cash surety, although I understand the court is not bound by that.

The State has agreed not to oppose an extension of time within the rules for sentencing after the determination of guilty.

.    .    .    .    .

THE COURT: Is that correct, Mr. Moore?

MR. MOORE (Deputy County Attorney): Yes, Your Honor.

After appellants were found guilty by the court, they moved for release pending appeal pursuant to Rule 7.2(b). The State opposed the release. Appellants had filed notice of appeal prior to this motion and made no objection to the State's opposition to the motion. Another hearing was held on the question of release approximately

one week later. Counsel for appellants and for the State stipulated to a $1500 bond for each appellant if the court found release pursuant to Rule 7.2(b) appropriate. Appellants filed a written motion urging that there were reasonable grounds to believe the convictions would be set aside on appeal. The State opposed the motion.

■ Appellants now contend, as they did at the hearing, that the State breached its agreement when it opposed release. The State's response both at the hearing and on appeal is that the agreement required only that the State not oppose release of the appellants on a low bond once the court determined that there were reasonable grounds to believe the convictions might be set aside on appeal as provided by Rule 7.2(b). The State points out and the trial court apparently agreed that the State was free to oppose release but not to oppose a low bond if release were granted. We believe the record supports this view and therefore reject the contention that the State breached the agreement. In any event, the matter is made moot by the fact that the appellants were in fact released on low bond following the hearing and have received the benefit of their agreement.

## THE SENTENCES

■ Appellants argued at the sentencings that the court should take into account the conditions at the prison and the effect they would have upon appellants. The sentencing judge declined to do so. We do not find in this any reversible error. Conditions at the State Prison may be the subject of judicial inquiry under certain circumstances but not in a sentencing proceeding following conviction. The trial judge is required to decide whether incarceration at the State Prison is appropriate in each instance when a felony has been committed. It is not appropriate that this decision be made on the basis of current conditions at the prison. We do not find *State v. Brazil*, 18 Ariz.App. 545, 504 P.2d 76 (1973) to be to the contrary. Other cases cited by appellants involving judicial inquiry into prison conditions are inapposite to a sentencing

488

proceeding following a judgment of guilt. The sentences imposed upon appellants are within statutory limits and are otherwise proper.

 Appellants' final contention is that the sentences should be set aside because of the trial judge's failure to grant a change of judge sought following conviction but before sentencing. The issue arose upon an oral motion prior to sentencing. Appellants did not file a written motion as required by Rule 10 nor did they request a hearing on the claim of bias. Under such circumstances we hold that the trial judge is not required to halt the proceedings and have the matter heard by another judge.

For the reasons stated, the judgments of guilt and sentences are affirmed.

SCHROEDER and EUBANK, JJ., concur.