STATE of Iowa, Appellee,

v.

Arnold Terrill BALDWIN, Jr.,
Appellant.

No. 85–449.

Supreme Court of Iowa.

Nov. 12, 1986.

Charles L. Harrington, Appellate Defender, Deborah A. Goins and Dory Sutker, Asst. Appellate Defenders, for appellant.

Thomas J. Miller, Atty. Gen., David Dorff, Asst. Atty. Gen., Charles G. Neighbor, Co. Atty., and Christopher Cogley, Asst. Co. Atty., for appellee.

Considered by HARRIS, P.J., and McGIVERIN, WOLLE, LAVORATO, and NEUMAN, JJ.

WOLLE, Justice.

Following trial to a jury, defendant Arnold Terrill Baldwin, Jr. was convicted of burglary in the second degree in violation of Iowa Code section 713.5 (1983). The court of appeals reversed the conviction on the ground that the district court erred when it refused to suppress evidence police officers had obtained by impounding defendant's van and inventorying its contents. We granted further review to examine the court of appeals decision. We now affirm that decision, reverse the judgment of conviction, and remand for further proceedings in the district court.

The parties' briefs sharply focus the fourth amendment issues we must decide. Defendant contends the police officers did not have reasonable cause to impound his van and therefore the subsequent inventory search of its contents violated his rights under the fourth amendment of the United States Constitution. The State in response argues that the officers had reasonable cause to impound the vehicle and, in the alternative, that any error was harmless. The parties acknowledge that in resolving these constitutional questions we must review the entire record de novo and make our own independent evaluation of the totality of the circumstances. *State v. Hardin,* 359 N.W.2d 185, 187 (Iowa 1984); *State v. Eubanks,* 355 N.W.2d 57, 58 (Iowa 1984). Evidence concerning the impoundment of the van was presented both during the hearing on defendant's motion to suppress and during the trial when items found in the van were admitted in evidence.

The evidence discloses that at about 3:00 a.m. on May 18, 1984, two Bondurant police officers in a marked police car were on routine patrol at a Union 76 truck stop adjacent to Interstate Highway I–80 when they observed a 1969 or 1970 Chevy van enter the truck stop parking lot. Noticing that the van lacked a front license plate, the officers drove to where the van came to rest in a parking space facing the truck stop restaurant. The officers watched as defendant and another man got out of the van and jogged or ran into the truck stop building. The two men ran past the fuel desk and restrooms to the cash register. One officer testified that the men stayed in front of the cash register for two to three minutes. The officers did not see the men after they watched them for that two to three minutes.

The officers returned to the van and examined a paper registration card in its back window. They observed that the card did not state the vehicle identification number (V.I.N.) or the year of the van's manufacture, and they concluded that the vehicle was illegally licensed. They then peered through a van window that was partially covered with styrofoam and observed a John Deere garden tractor in plain view in the rear of the van. The officers did not then know, and did not learn until about four hours later, that several garden tractors of that type had been reported missing from a farm supply store in the nearby town of Colfax, Iowa. The police officers drove back across the truck stop area, parked, and waited for twenty to thirty minutes to see if anybody would come back to the van. They then visited with a cashier inside the truck stop who said the men "had left the area." The officers decided the van should be impounded, phoned a wrecker to remove it from the truck stop, and then conducted an inventory search of its contents. The evidence obtained by the officers during their inventory search included the serial number of the garden

tractor and tractor bolts which were later traced to the Colfax supply store.

Defendant was charged with burglary in the second degree for allegedly breaking into the Colfax store with the intent to commit theft. *See* Iowa Code § 713.5 (1983). Before trial defendant filed a motion to suppress the evidence seized during the inventory search on the ground that the impoundment of the van and subsequent search had violated his fourth amendment constitutional rights. The district court denied the motion to suppress, the evidence was admitted at trial, and the jury found defendant guilty of second-degree burglary.

## I. *Was the Van Lawfully Impounded?*

 Evidence obtained in violation of the fourth amendment may not be used in a criminal proceeding against the victim of an illegal search and seizure. *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561, 571 (1974); *State v. Leto,* 305 N.W.2d 482, 484 (Iowa 1981). Law enforcement personnel may conduct a reasonable inventory of the contents of a lawfully impounded vehicle without either a search warrant or probable cause for a warrantless search. *South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000, 1005–06 (1976). Moreover, the State may use incriminating evidence found during a valid inventory search. *See State v. Roth,* 305 N.W.2d 501, 508 (Iowa), *cert. denied,* 454 U.S. 870, 102 S.Ct. 338, 70 L.Ed.2d 174 (1981). The State concedes, however, that the legal validity of an inventory search depends upon the lawfulness of the underlying impoundment. *State v. Kuster,* 353 N.W.2d 428, 431 (Iowa 1984); *see United States v. Wilson,* 636 F.2d 1161, 1163 (8th Cir.1980).

 The State has the burden of proving that its officers had reasonable cause to impound the vehicle, absent a statute or ordinance authorizing it. *Kuster,* 353 N.W.2d at 431. Iowa Code section 321.89 (1983) does set forth many circumstances in which law enforcement personnel may im-

pound vehicles deemed abandoned, such as when a vehicle "has remained illegally on public property for more than seventy-two hours" or when a vehicle "has been unlawfully parked on private property or has been placed on private property without the consent of the owner or person in control of the property for more than twenty-four hours." The State, however, does not rely on that statute as authority for its impoundment of the van, and defendant does not argue that the statute provides exclusive grounds for impounding abandoned vehicles.

The State maintains that reasonable cause for impoundment of the van was established by three factors present in this case: (1) the van's temporary registration card was incomplete and therefore suspect; (2) the van appeared to have been abandoned by its occupants; and (3) the officers needed to place the garden tractor in safekeeping.

We measure the actions of each officer by an objective test: "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968); *see Scott v. United States,* 436 U.S. 128, 137, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168, 177 (1978).

A. *The Van's Temporary Registration Card.* One of the police officers testified that the van was impounded because of its incomplete paper card, explaining that the van was not legally registered because its temporary plate did not contain the V.I.N. and year of manufacture. We conclude, however, that the officer was mistaken in his understanding of the legal requirements for a temporary license card. Iowa Code section 321.25 (1983) provides:

A vehicle may be operated upon the highways of this state without registration plates for a period of twenty days after the date of delivery of the vehicle to the purchaser from a dealer if a card bearing the words "registration applied for" is attached on the rear of the vehicle. The card shall have plainly stamped or sten-

ciled the registration number of the dealer from whom the vehicle was purchased and the date of delivery of the vehicle. . . .

Defendant's van had in its rear window the paper card we here reproduce:

This card entirely satisfied the statute's requirements. Even though there were places on the card for inserting the year of the vehicle and V.I.N., the statute did not require any more information than that displayed on the card in this van's rear window.

■ We decline the State's invitation to rewrite the statute by expanding the amount of information a temporary plate must contain. The statute is unambiguous and its meaning plain. *Roosevelt Hotel, Ltd., v. Sweeney,* 394 N.W.2d 353, 355–56 (Iowa 1986); *Phillips v. Iowa District Court,* 380 N.W.2d 706, 710 (Iowa 1986). The facts concerning the temporary registration card gave these officers no reasonable basis for impounding the van.

■ B. *Abandonment of the Van.* Peace officers may impound and inventory a motor vehicle if the occupants or other complaining parties have abandoned it and thus retained no "reasonable expectation of privacy" in the vehicle and its contents. *United States v. Wilson,* 472 F.2d 901, 902 (9th Cir.1972), *cert. denied,* 414 U.S. 868, 94 S.Ct. 176, 38 L.Ed.2d 116 (1973). Abandonment will not be presumed and must be

established by "clear, unequivocal and decisive" evidence. *Friedman v. United States,* 347 F.2d 697, 704 (8th Cir.), *cert. denied,* 382 U.S. 946, 86 S.Ct. 407, 15 L.Ed.2d 354 (1965) (quoting *Linscomb v. Goodyear Tire & Rubber Co.,* 199 F.2d 431, 435 (8th Cir.1952)). The expectation of privacy with respect to an automobile is significantly less than that relating to a home or office. *Opperman,* 428 U.S. at 367–68, 96 S.Ct. at 3096, 49 L.Ed.2d at 1004–05; *Eubanks,* 355 N.W.2d at 59. Nevertheless, abandonment cannot be predicated solely on the fact that the object of a seizure is an automobile. *See Coolidge v. New Hampshire,* 403 U.S. 443, 461, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564, 580 (1971) ("The word 'automobile' is not a talisman in whose presence the fourth amendment fades away and disappears.").

Courts have found vehicle abandonment in circumstances where motor vehicles have been deserted following high speed police chases. *See United States v. Edwards,* 441 F.2d 749, 752–54 (5th Cir.1971) (driving at speeds of up to 110 miles per hour, defendant ran car partially off the pavement and fled on foot leaving the

lights on and the engine running); *State v. Childs,* 110 Ariz. 389, 390–91, 519 P.2d 854, 855–56 (1974) (crashing during high speed chase with police and driver seen fleeing on foot); *State v. Schutte,* 117 Ariz. 482, 486, 573 P.2d 882, 886 (Ct.App.1977) (accelerating past a partial police road block, car left in open desert with back door open and no one inside); *Cooper v. State,* 174 Ga. App. 464, 465–66, 330 S.E.2d 402, 403–04 (1985) (flight on foot leaving both doors open and car backed onto another public road); *Henderson v. State,* 695 P.2d 879, 881–82 (Okla.Crim.App.1985) (occupant escaped on foot after police pursuit of car). In the absence of a police chase, courts have considered other factors in finding abandonment. *See, e.g., United States v. Calhoun,* 510 F.2d 861, 866 (7th Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104 (1975) (only one out-of-date license plate, flat tire, snow shoveled up around car, doors open, and testimony that it had been there for "a long time"); *United States v. Angel,* 201 F.2d 531, 533 (7th Cir.1953) (stolen car mired in mud); *Hawley v. Commonwealth,* 206 Va. 479, 483, 144 S.E.2d 314, 317 (1965), *cert. denied,* 383 U.S. 910, 86 S.Ct. 894, 15 L.Ed.2d 665 (1966) (defendant left car in motel parking lot saying he would return for it in three or four days and had not come for eight days).

■ The facts in those cases differ markedly from the facts disclosed in the record here. The State has not met its burden to show that defendant and his companion intended to or did abandon the van. Here there was no police chase. The police officers did not pursue the van's occupants, and this record does not even show that the men exiting the van were aware of the presence of the marked police car and two policemen at the truck stop. Moreover, the van was lawfully parked, with ignition off and doors closed, in a designated parking area. *See United States v. Abbott,* 584 F.Supp. 442, 451 (W.D.Penn.1984) (no abandonment shown where police officers discovered vehicle parked on private lot with engine off, doors closed, and keys gone despite fact that it was improperly parked and had earlier

been involved in a chase). Granted these events took place at an early morning hour, nevertheless defendant and his companion had been away from the van for only twenty to thirty minutes. Defendant did not relinquish his reasonable expectation of privacy in the van and its contents by leaving the van unattended for twenty to thirty minutes at this interstate highway truck stop.

We find no merit in the State's contention that the van could lawfully be impounded as an abandoned vehicle.

*C. The Need for Safeguarding the Garden Tractor.* The State also argues the officers had reasonable cause for impoundment because they needed to protect the garden tractor in the rear of the van. In its brief the State argues that "the officers could reasonably conclude that impoundment of the van was the most reasonable means of ensuring the safety of the tractor from theft or other loss." The State cites only *Opperman* and relies on the Court's reference to the "caretaking" activities of police and the need to keep a vehicle's contents safe from theft or other loss. 428 U.S. at 369, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005. *Opperman,* however, does not suggest that a need to safeguard the contents of a vehicle justifies impoundment. The inventory which follows a lawful impoundment, not the impoundment itself, is the safeguarding practice which may protect police officers from claims or disputes over lost or stolen property, and also may protect the owner of the property from potential theft or vandalism. In *Opperman* impoundment was lawful because the defendant had violated a parking ordinance. That case provides no support for the State's contention here that impoundment was necessary to safeguard the tractor within the van.

■ The facts in this record do not support the State's theory that the officers were merely undertaking to safeguard this garden tractor. One police officer testified that

it's not normal for me, I guess, to see a garden tractor being hauled around in something at that time of the morning unless it's being transported, you know, for some reason or in my case what I felt was the possibility of it it being stolen. That's why I pursued it.

It is apparent the officer had in mind not protection of defendant's property but his suspicion that the garden tractor might be a stolen one. But there had been no report of a stolen garden tractor. The mere presence of a garden tractor in the back of this parked van did not provide an objectively reasonable basis for the officers' belief that the van could lawfully be impounded. The seizure of the van was, at best, premature. *See Lovett v. State,* 403 So.2d 1079, 1082 (Fla.Dist.Ct.App.1981). The officers' intuitive suspicion of misconduct was not here enough to warrant impoundment.

The State has not carried its burden of demonstrating that the police officers had reasonable grounds to impound the van.

II. *Harmless Error.*

 The State's fall-back position is that even if the impoundment was unlawful, a new trial is not required because the evidence obtained in the inventory search was harmless. Defendant would be entitled to a new trial unless the State has established beyond a reasonable doubt that the error was harmless. *See Connecticut v. Johnson,* 460 U.S. 73, 81–83, 103 S.Ct. 969, 974–75, 74 L.Ed.2d 823, 831 (1983); *State v. Freeman,* 297 N.W.2d 363, 367 (Iowa 1980). The physical evidence that was the subject of the motion to suppress directly linked the defendant to the charged crime. The other evidence, here summarized, did not make that direct connection: (1) defendant was identified as being in the Colfax store some three to four weeks prior to the theft of the garden tractor; (2) an empty pack of the brand of cigarettes smoked by defendant was discovered at the crime scene; (3) tire tracks like those made by the van registered to defendant were also found there; (4) defendant, his hands and clothes covered with grease, was seen at the truck stop on the morning that the tractor was reported missing; (5) the garden tractors missing from the Colfax store had been shipped in grease; and (6) while parked at the truck stop, the van registered to defendant contained a garden tractor.

On this record we agree with the court of appeals that the admission of the evidence found in the van solidly buttressed a case otherwise dependent largely on circumstantial evidence. The State has not demonstrated beyond a reasonable doubt that admission of the challenged evidence was harmless. Defendant is entitled to a new trial.

DECISION OF COURT OF APPEALS AFFIRMED; JUDGMENT OF DISTRICT COURT REVERSED; REMANDED.