**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jose RUBIO, Defendant-Appellant.**

**No. 15899.**

United States Court of Appeals Seventh Circuit.

Dec. 11, 1968.

Certiorari Denied April 21, 1969. See 89 S.Ct. 1482.

Terence MacCarthy, Chicago, Ill., for defendant-appellant.

Thomas A. Foran, U. S. Atty., Lawrence T. Stanner, Asst. U. S. Atty., Chicago, Ill., for appellee; John Peter Lulinski, Michael B. Nash, Asst. U. S. Attys., of counsel.

Before KILEY, SWYGERT and KERNER, Circuit Judges.

SWYGERT, Circuit Judge.

Jose Rubio appeals his conviction and sentence for violation of the federal narcotics laws, 21 U.S.C. §§ 174, 176a, which respectively prohibit the receiving and concealing of any narcotic drug (heroin) and marihuana. After a court trial and the denial of his post-trial motions in arrest of judgment and for a new trial, the defendant was sentenced to a term of imprisonment.

Two errors are urged by the defendant in this appeal, the trial court's denial of his motion to suppress certain evidence and the court's failure to order the return of a sum of money seized from the defendant at the time of his arrest.

This case originated with the arrest about 4:30 a. m. on August 19, 1964 of Juan Rodriguez, Crispin Galvin, and Jose Rubio in an apartment in Chicago. Five agents of the Federal Bureau of Narcotics, without arrest warrants, had gone to the apartment under instructions from their superior to arrest Rodriguez and Galvin, each of whom had previously made separate sales of heroin to a narcotics agent.

After arriving at the apartment where the agents were told they could find Rodriguez and Galvin, two agents stationed themselves at a rear door of the apartment, while agent Patch and the remaining two agents approached the front door. Agent Patch knocked on the front door; it was opened by Rodriguez. The agent identified himself and told Rodriguez that he was under arrest. When Rodriguez attempted to shut the door, Patch and another agent forced it open. The agents testified that, after gaining entrance to the apartment,[1] a brief struggle ensued during which they were continually shouting their identification. As Rodriguez was brought under control, the two agents heard a commotion in the adjoining bedroom. Agent Patch opened a connecting door with gun drawn and observed Galvin and Rubio in the room. When the two agents entered the room, Rubio, clad only in his undershorts and a T-shirt, was holding in his right hand a small case, variously described as a vanity case or a small suitcase. According to the testimony of an agent, Rubio had one leg over a window sill in the room, or on it, as though he was in the process of leaving the building. This window was about fifteen feet above the ground. Agent Patch, after identifying himself as a federal agent, ran to the window where he restrained Rubio

---

1. The defendant in his brief raised no question regarding the legality of the agents' entrance into the apartment for the purpose of arresting Galvin and Rodriguez, In fact, at oral argument, Rubio's counsel conceded that the agents' entry was lawful.

and placed him under arrest. When Patch opened the vanity case, he found $2,796 in cash and quantities of substances, later identified as heroin and marihuana. At the time, Rubio claimed ownership of the money, but denied any knowledge of the drugs.

A complaint was filed with the United States Commissioner on the day of arrest and counsel was appointed. One week later, Rubio filed a petition seeking return of the funds that were seized at the time of his apprehension. Three days thereafter, the Internal Revenue Service, pursuant to 26 U.S.C. §§ 6851 and 6862, served Rubio with notices and demands for tax payments based on the marihuana that he had possession of at the time of his arrest and his failure to file an income tax return in any prior year. The narcotics and income tax deficiencies totaled $2,796, the exact amount which had been seized from Rubio.

■■■■■ The defendant prior to trial moved for the suppression as evidence of the narcotics seized from him at the time of his arrest. After a hearing, the district court denied the motion. The principal error assigned for reversal is that this motion should have been granted. The defendant contends that he was the victim of an illegal search inasmuch as there was no probable cause for his arrest and that a valid search incident to an arrest must be premised on a legal arrest. Thus, the central issue is whether the agents had reasonable grounds to believe that Rubio was violating the federal narcotics laws at the time of his arrest.[2]

■■■■■ The thrust of the defendant's argument is that his arrest must be viewed as one in which flight was the primary and only substantial reason for his apprehension. We believe that this is an overly restrictive interpretation of the facts which the arresting agent could relevantly consider prior to making the arrest. Although flight alone is insufficient to create probable cause for an arrest, Wong Sun v. United States, 371 U.S. 471, 483, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963), and Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L. Ed.2d 1332 (1958), it may be crucial when, considered with other relevant facts.[3] For example, the Second Circuit in United States v. Soyka, 394 F.2d 443 (2d Cir. 1968), held that there was probable cause where a narcotics suspect, upon seeing a federal agent in the hall near his apartment, "jumped back toward the inner recess of the apartment." The *en banc* decision of that court concluded that the defendant's flight was

---

2. 26 U.S.C. § 7607 reads in part:
   The Commissioner, Deputy Commissioner, Assistant to the Commissioner, and agents, of the Bureau of Narcotics of the Department of the Treasury * * * may—

   *   *   *   *   *

   (2) make arrests without warrant for violations of any law of the United States relating to narcotic drugs * * * or marihuana * * * where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation.

   The term "reasonable grounds" as used in section 7607 and the term "probable cause" as used in the fourth amendment are "substantial equivalents of the same meaning." Draper v. United States, 358 U.S. 307, 310 n. 3, 79 S.Ct. 329, 3 L.Ed. 2d 327 (1959).

   The test for determining probable cause for arrest was stated by the Supreme

Court in Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964):
   Whether that arrest was constitutionally valid depends in turn upon whether at the moment the arrest was made, the officers had probable cause to make it— whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

3. The Supreme Court has recognized the absence of probative value that exists when flight in the abstract occurs: "We have consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime." Wong Sun v. United States, 371 U.S. at 483, 83 S.Ct. at 415.

the "culmination of instances" justifying the arrest.

■ Unlike *Wong Sun*, where the only reliable fact which the arresting officer had at the time of the defendant's arrest was his flight, the case before us presents a factual situation, where prior to Rubio's arrest, the Government agent had observed a variety of incriminating circumstances unrelated to his attempted flight. The arresting agent had the following knowledge at the time of Rubio's apprehension: that he was inside an apartment that was claimed by a fellow agent to be presently inhabited by known narcotics dealers; since making his entrance into the apartment, he continually had shouted his identification which presumably had been heard by everyone present in the adjoining room of the apartment; Rubio was in the apartment at 4:30 a. m. and in the immediate presence of Galvin, one of the men he had come to arrest; Rubio was holding a small case that appeared to be that belonging to a woman; and, although dressed only in his underwear, Rubio was about to jump from a window ledge fifteen feet above the ground.

■ A probable cause conclusion may be drawn from the gestalt which a factual situation presents; that is, such a conclusion may be deducted from the separate facts as they interrelate, even though such a conclusion could not be reached if the separate facts were evaluated on an individual basis. Here, Rubio's flight, his presence in the abode of known drug vendors, the mode of his dress (or undress), and his vanity case are individual facts which, if analyzed without reference to the surrounding circumstances, may be ambiguous and thus, even though cumulated, would not be a justifiable basis for Rubio's arrest. This individual factual analysis is not only unrealistic, but is also contrary to the *Beck* rule [4] which mandates a totality-of-circumstances inquiry. Employing this test to the facts in the instant case, we hold that the agent had reasonable grounds to believe that a narcotics violation was being committed when Rubio was arrested. Consequently, the narcotics found in Rubio's case were seized as the result of a legal search incident to a valid arrest.

■■ The second error urged relates to the seizure of Rubio's money. On several occasions after his indictment, Rubio moved for an order restoring his funds, claiming that their seizure interfered with his right to effective assistance of counsel. The court denied the motions. About nine months after the arrest the district court did, however, order the Government to return the sum of $1,000 to Rubio and his counsel for use in the preparation of a defense. The defendant contends that under the circumstances here the retention of his money by the Government for nine months and the subsequent partial release of only $1,000 were unwarranted violations of his sixth amendment right to the effective assistance of counsel. If by this assertion, Rubio is attempting to contest the validity of the jeopardy assessment, it must be said that this is not the appropriate lawsuit to contest the Government's action. The real question is whether Rubio's constitutional rights were infringed as a result of the assessment. Standing alone, the delay in returning to Rubio $1,000 of the money seized is insufficient to establish a constitutional violation. Moreover, Rubio has failed to assert a single example of prejudice that he sustained in the preparation of his defense as the result of the nonreturn of his funds. Additionally, Rubio cites no cases as authority to support his claim of ineffective assistance of counsel. Accordingly, we hold that the defendant was not denied his sixth amendment right to counsel.

*The district court's judgment is affirmed.*

4. See note 2, supra.