504 P.2d 76

STATE of Arizona, Appellee,

v.

Gary Rogers BRAZIL, Appellant.

No. 1 CA–CR 322.

Court of Appeals of Arizona,
Division 1,
Department B.

Dec. 19, 1972.

Rehearing Denied Jan. 17, 1973.

Review Denied March 6, 1973.

**546**

Gary K. Nelson, Atty. Gen. by William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee.

Flynn, Kimerer, Thinnes & Galbraith by John J. Flynn and Michael D. Kimerer, Phoenix, for appellant.

HAIRE, Chief Judge, Division 1.

The defendant-appellant, Gary Rogers Brazil, was charged with possession of narcotics for sale, possession of narcotics, possession of marijuana for sale, and possession of marijuana. A pretrial motion to suppress evidence was denied. At the trial, the possession counts were dismissed on the prosecution's motion and at the conclusion of a jury trial, the defendant was found guilty of possession of heroin for sale and of possession of marijuana for sale. The trial judge sentenced the defendant to a term of imprisonment in the Arizona State Prison for a period from five to fifteen years.

The defendant's motion for judgment notwithstanding the jury's verdict as well as his motion for a new trial were denied and a timely appeal was made to this Court.

Subsequently, the defendant filed in this Court a motion to suspend the appeal and to remand to the trial court for a hearing on newly discovered evidence. It was contended that the newly discovered evidence would show that the defendant was actually "framed" by a police officer witness who was out to "get him". In responding, the County Attorney of Maricopa County did not oppose the motion for remand, stating, "There have been serious charges and allegations made by the [defendant] which should be presented by both sides in a motion for a new trial." This Court granted the motion for remand, and an evidentiary hearing was then held before the same trial judge who had presided at the origi-

nal trial. This hearing on defendant's second motion for new trial involved six full days of testimony concerning the factual allegations made by defendant in his motion for new trial. At the close of the hearing, the trial judge entered the following order:

"Pursuant to the order of the Court of Appeals, Division 1, entered October 5, 1970, the Court took evidence in support of defendant's motion for new trial, both oral and documentary, and viewed the scene. Having considered the evidence, the affidavits, memoranda and arguments of counsel,

IT IS ORDERED denying or refusing defendant's motion for new trial."

After entry of the above-quoted order, the appeal was reinstated before this Court, with defendant appealing not only from the original judgment and sentence, but also from the above order denying his motion for new trial.

■ We consider first defendant's contention that on the remanded hearing perjury was shown, and therefore the trial court should have granted his motion for new trial. The defendant's first question is:

"Does perjury by a police officer who is the state's key witness require reversal of the appellant's conviction?"

Assuming perjury of the magnitude alleged in this case, the obvious answer is that of course reversal would be required. However, the determinative question is not whether such perjury would require reversal, but rather whether the record made at the remanded hearing on defendant's motion for new trial requires a finding that perjury was in fact committed. We have reviewed the record, including specifically Officer Todd's testimony at the preliminary hearing, at the trial, and at the extended evidentiary hearing on the motion for new trial, and while many inconsistencies in his testimony are apparent, we do not find these inconsistencies to be of such a nature as to convince this Court that the witness was committing, or had committed, perjury. *A fortiori,* we cannot say that

the evidence was such as to require that the trial judge grant the motion for new trial. As stated above the trial judge listened to the witnesses and had an opportunity to observe their demeanor in an evidentiary hearing which lasted six days. He also viewed the premises, the physical characteristics of which figured so prominently in defendant's allegations of perjury. In view of the trial judge's denial of the motion for new trial, we must conclude that he found that perjury was not committed, and in that finding, we concur.

■ Another question raised by defendant on appeal has a tangential relationship to defendant's allegation of perjury by the state's key witness, Officer Todd. The question, as stated by defendant, is as follows:

"Does collusion between a key witness, who could not be found to testify for the defense at the trial, and the chief police officer require a reversal?"

This question relates to the unavailability at the time of trial of a witness named Connie Green, and the subsequent discovery by defendant that Connie Green had at times functioned as a police informer in narcotics cases. Although defendant contends that the unavailability of this witness at the time of trial was due to collusion between the witness and Officer Todd, the state's key witness, there is ample evidence from which the trial judge could have found that such collusion did not exist. At the extended hearing on the motion for new trial, Connie Green testified that she had not been an informer for the state in connection with the charges against the defendant, and Officer Todd testified to the same effect. While defendant might suspect that Connie Green did inform against him and that Officer Todd had some hand in making her unavailable at the time of trial, the direct evidence is to the contrary, and the record as a whole certainly would not support reversing, on that basis, the trial court's denial of the motion for new trial.

Separate and apart from any question of perjury, the defendant contends that his motion to suppress should have been granted because Officer Todd's affidavit was insufficient to support the issuance of a search warrant.[1] The affidavit which is

---

1. The affidavit states:
"Your affiant, a peace officer, Richard Todd being first duly sworn, upon oath, deposes and says:

I.

"That on or about the 31 day of August, 1969, in the City of Phoenix, County of Maricopa, State of Arizona, the crime of Illegal Possession of Narcotics & Dangerous Drugs (was) (and) (is being) committed by ———— in the manner following to-wit: at the Present Time there are Narcotics and Dangerous Drugs inside the Structure at 4021½ W. Hadley Phoenix ————.

II.

"That your affiant has, and there is probable and reasonable cause to believe, and that he does believe, that there is now in the possession of the person(s) of ———— and in and upon the premises and building(s) located at and also designated and described as Five houses East of 41 ave on Hadley on the South Side of Hadley, 6 Houses West of 40 ave on the South Side of Hadley, Believed to Be 4021½ W. Hadley. The structure to Be Searched is to the Rear or to the South of 4021 W. Hadley

Which is in the 4000 block of W. Hadley Phoenix, ———— in the said County of Maricopa, State of Arizona, including all rooms and buildings used in connection with said premises and buildings, and adjoining the same, and in (a) motor vehicle(s) or trailer described as ———— certain articles, items, and property:

( ) ~~which were stolen or embezzled,~~
(x) which were used as a means of committing a felony,
(x) which are possessed with the intention to use them in committing a public offense,

III.

"The said articles and property are described particularly as follows, to-wit: a useable amount of Narcotics & Dangerous Drugs.

IV.

"That the following facts establish the existence of grounds for the issuance of a search warrant for the search of the persons, premises and buildings, and motor vehicles or trailer, described in paragraph two (II) herein, and further establish probable cause for believing that said grounds exist.

set forth in full in footnote 1, constituted the only information submitted to the jus-

"Your affiant has been a Phoenix Police Officer for the past 5 years and is now employed in such capacity by the Phoenix Police Department, and has acted and received the information set forth in this affidavit in that capacity.

"On the date of August 31, 1969, at approximately 9:30 P.M., your affiant (received information from) (observed) (read) affiant Todd was staking out the address of 5823 W. Fairmont owned by Gary Roger Brazil c/m-25 (AKA Skippy Brazil) at 9:30 P.M. Gary Brazil and 3 other cauc/males left the address and drove to 6021 W. Mulberry 2 houses West in a 1968 Blue Chevrolet, Brazil and the other Males then Began to load Numerous Trunk Lockers and 1 –T-V set in the Blue 1968 Chevrolet and in a 1964 Chev Station Wagon LPY–191.

"Both Cars then drove South on 59 to Buckeye Rd and then to the alley Between Hadley & Tonto 40 ave & 41 ave. Brazil and other Subjects Began to unload Trunks & The T-V Set and put them in the White & Pink Structure Believed to Be 4021½ W. Hadley. One Male stood in the alley and kept watching while another stood on Hadley watching. Numerous items were unloaded By Brazil which included the T-V Set and Trunks or Foot Lockers and paper Bags which were removed from under the Back Seat of the Chevrolet. Affiant was stationed in the alley and could positively identify Gary Brazil. After all the items were unloaded, Brazil then stood in front of unloaded, Brazil then stood in front the the Chevrolet and another Male Drove it out of the Alley. Brazil then left with the other Subject.

"Affiant has received information from past proved Confidential and reliable informants that Gary Brazil is a very Big Narcotic Dealer in Phoenix and that he keeps his Narcotics in different places. The informants have also stated that Brazil holds large quantities of Narcotics and Dangerous Drugs in Trunks or Foot Lockers. The above informants have given information which have led to the arrest of 25 people for Narcotics and and made a total of 4 Controled Narcotic Buys for Affiant.

"Because of the above listed Circumstances and highly suspicious activity By Gary Brazil and that that this his usual way he holds his Narcotics and Dangerous Drugs Affiant Believes that the above described Structure at 4021½ W. Hadley Gary Brazil has his Narcotics & Dangerous Drugs.

tice of the peace who issued the search warrant. Therefore, it must be determined

"Your affiant desires to keep the identify of the said informant secret and confidential because your affiant believes that the disclosure of the said informant's identity would destroy and tend to impair the said informant's future usefulness and effectiveness to law enforcement officers engaged in investigating and uncovering illegal criminal activity, and would endanger the informant's safety and well-being to-wit: —————.

"The said informant stated that he, the said informant, did speak with personal knowledge, unless and except where specifically stated to be otherwise.

"Your affiant (affiant's fellow officer) was informed by the said confidential reliable informant between the aforementioned dates that —————.

"Further, that affiant has and there is probable and reasonable cause to believe, and that he does believe and is reasonably positive that the aforementioned property is located at the place heretofore set out in this affidavit.

"The affiant's experience in investigation of Illegal Possession of Narcotics & Dangerous Drugs has shown that Gary Roger Brazils—c/m—9-26-43 Possession of Narcotics & Drugs continues day and night; it is therefore, important that the aforementioned property be seized as soon as possible, otherwise your affiant fears that it will become nonexistent through consumption, sale of Transfer: hence, for this reason and because of the other information set forth elsewhere in this affidavit, your affiant requests that this warrant contain a direction that it may be served at any time of the day or night, good cause appearing therefor.

"Other reasons for nightime service not previously set forth in this affidavit are as follows: In As Much As The Affiant Saw Gary Roger Brazil, c/m 9-26-43 Go To The House At 4021½ W. Hadley, Phoenix & Take in This Narcotics & Dangerous Drugs on to the Premises & into the house & From Affiants Past Experience Reference How this Subject moves this Dope From Place to Place, affiant Believes that the narcotic & Drugs will Be Sold or Transferred, as soon as Possible necessitating a search as soon as Possible.

"WHEREFORE affiant prays that a search warrant issue commanding that an immediate search be made of the persons, premises and buildings, and vehicles described herein for the articles and property herein described, and that the same be brought before a magistrate and disposed of according to law. . . . "

whether the allegations contained in the affidavit were sufficient to support his conclusion that there was probable cause to believe that narcotics were being kept in the premises to be searched. Before considering the specific allegations contained in the affidavit, we state certain principles which must guide our deliberations.

The United States Constitution's Fourth Amendment prohibition is against "unreasonable searches and seizures" and further provides that "no warrants shall issue, but upon probable cause". Probable cause exists where the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

The quantum of evidence necessary to support a finding of probable cause must be differentiated from that necessary to support a finding of guilt. In establishing probable cause, there is no requirement of proof beyond a reasonable doubt as is necessary in establishing guilt. As stated in Brinegar, *supra*:

> "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved." 338 U.S. at 175, 69 S.Ct. at 1310.

Stated another way,

> ". . . sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment. . . ."

Hill v. California, 401 U.S. 797, 804, 91 S.Ct. 1106, 1111, 28 L.Ed.2d 484 (1971).

In this regard, while hearsay is not admissible to establish guilt, hearsay is sufficient to establish probable cause for the issuance of a search warrant ". . . so long as a substantial basis for crediting the hearsay is presented." Jones v. United States, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960). In a recent opinion, the United States Supreme Court reviewed in some detail the function of hearsay evidence as forming a basis for a finding of probable cause by a magistrate, with special attention being given to the situation where such hearsay evidence is interrelated with evidence given by the requesting officer based upon his own knowledge of the reputation of the defendant gained in his official capacity as an officer, and also based upon specific facts resulting from his own personal observations (a situation similar to that presented by Officer Todd's affidavit in this case). United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). After reviewing its recent decisions in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), both of which set forth a two-pronged test for assessing the reliability of hearsay evidence when used as a basis for the issuance of a search warrant, the Court rejected any simple mechanical approach to the question, and reasserted the Jones, *supra*, "substantial basis" test for crediting hearsay. This is not to say that the Court abandoned the two-pronged test of Aguilar and Spinelli. However, the Court in Harris made it abundantly clear that the basic question was whether, considering the evidence presented to the issuing magistrate *as a whole*, there were underlying facts or circumstances presented showing a *substantial basis* for supporting the hearsay and supporting a finding of probable cause. On the question of what facts or circumstances might be considered in assessing the reliability of hearsay, the Court stated:

> "We cannot conclude that a policeman's knowledge of a suspect's reputation—

something that policemen frequently know and a factor that impressed such a 'legal technician' as Mr. Justice Frankfurter—is not a 'practical consideration of everyday life' upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip. To the extent that Spinelli prohibits the use of such probative information, it has no support in our prior cases, logic, or experience and we decline to apply it to preclude a magistrate from relying on a law enforcement officer's knowledge of a suspect's reputation," [2] 403 U.S. at 583, 91 S.Ct. at 2081.

■ Applying these principles to the total picture presented by Officer Todd's affidavit, we find that there was a "substantial basis" for the magistrate to assign reliability to the informant's tip. Insofar as concerns credibility (the first "prong" of Aguilar and Spinelli), the affidavit sets forth the giving of prior "information which have led to the arrest of 25 people for Narcotics and made a total of 4 Controlled Narcotic Buys for Affiant". Insofar as concerns a showing of the underlying facts or circumstances showing how the informant acquired his information (the second "prong" of Aguilar and Spinelli), the affidavit could have been more specific, but it does state that the informant advised the officer that he (the informant) spoke with "personal knowledge".

Here the informant's information did not directly concern the specific crime with which the defendant was charged, but was more in the nature of information as to a *modus operandi* utilized by defendant. Under such circumstances, we do not believe that a specific and detailed description as to how the informant obtained the information is as critical as it might have been if the hearsay information were being relied upon as the *sole* basis for the issuance of the search warrant. There can be no question but that sufficient information was set forth from which the justice of the peace could have found that the informant was credible, and when this reported *modus operandi* (reinforced by the officer's knowledge of the general reputation of defendant as a narcotics dealer) was subsequently observed in operation by the officer under very suspicious circumstances—the moving at a late time of night of items which appeared to the officer to be trunk lockers, together with the posting of two lookouts at the time of unloading—there certainly was sufficient reliable evidence before the justice of the peace to present a "substantial basis" from which he *could* have found probable cause  As stated in Jones, *supra:*

> "The Commissioner [justice of the peace] need not have been convinced of the presence of narcotics in the apartment. He might have found the affidavit insufficient and withheld his warrant. But there was substantial basis for him to conclude that narcotics were probably present in the apartment, and that is sufficient." 362 U.S. at 271, 80 S.Ct. at 736.

In our opinion the motion to suppress was properly denied.

■ The final question presented by defendant is worded as follows:

> "Does the sentence of the appellant to the Arizona State Prison at Florence

---

2. Even though Spinelli found the affidavit presented in that case insufficient to support a finding of probable cause, the Spinelli Court did not hold that such a deficient informant's tip could not be given any consideration by the magistrate. As stated by the Court in Spinelli:
   "This is not to say that the tip was so insubstantial that it could not properly have counted in the magistrate's determination. Rather, it needed some further support. When we look to the other parts of the application, however, we find nothing alleged which would permit the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed." 393 U.S. at 418, 89 S.Ct. at 590.

constitute cruel and unusual punishment in that if sent to that prison, the appellant will, in all probability, be killed because of his activities as a cooperating agent with the Federal Bureau of Narcotics?"

Subsequent to his conviction in this case, defendant pled guilty to a federal tax violation and is presently incarcerated in a federal prison. Also, an order has been entered modifying his state sentence so that it will be running concurrently with his federal sentence. However, the federal sentence will terminate prior to the time the state sentence is to expire, and presumably at the expiration of the federal sentence the defendant will be returned to the Arizona State Prison to complete his sentence in this case. It is defendant's contention that even though his sentence is well within the Arizona statutory limits and thus not cruel and unusual punishment *per se*, the peculiar facts here involved do make it violative of the Eighth Amendment.

It is not disputed that defendant has been involved with the Federal Bureau of Narcotics as a cooperating agent, and defendant contends that because of this a sentence to the Arizona State Prison where he would be known to other inmates would be the equivalent of a death sentence. In reviewing this question, we note that the defendant has not produced any witnesses to substantiate his fears and to show the inability of State Department of Correction officials to provide adequate protection during his imprisonment. Upon this state of the record we cannot presume that defendant will not be adequately protected during his incarceration.

The judgment and sentence, and the order denying defendant's motion for new trial, are affirmed.

EUBANK and JACOBSON, JJ., concur.