674 P.2d 859

**In the Matter of the APPEAL IN MARICOPA COUNTY JUVENILE ACTION NO. J–84984.**

**No. 1 CA–JUV 181.**

Court of Appeals of Arizona, Division 1, Department C.

Aug. 9, 1983.

Review Granted Sept. 13, 1983.

Atmore Baggot, Phoenix, for appellant.

Thomas E. Collins, Maricopa County Atty. by Barbara K. Miller, Deputy County Atty., Phoenix, for appellee.

OPINION

JACOBSON, Presiding Judge.

The sole issue presented on appeal from an order of the juvenile court transferring the juvenile appellant to adult court for criminal prosecution is whether Arizona's "reasonable grounds to believe" standard of proof embodied in Rule 14(b), Rules of Procedure for Juvenile Court, 17A, A.R.S.,[1] meets minimum requirements of due process under the fourteenth amendment.

In the early evening of October 5, 1981, appellant, who was then almost 17 years old, was riding in an automobile with three other juveniles and sitting in the front passenger seat. When the car stopped at an intersection, appellant exited the passenger side, went to the car behind him and punched the driver in the face. According to appellant, this was in response to an obscene gesture made by the victim. As a result of the blow, the victim suffered serious injury to his right eye. This act led to a petition of delinquency being filed on December 7, 1981, charging that appellant was a delinquent child in that he had committed the crime of aggravated assault in violation of A.R.S. § 13–1203(A)(1).

Because of the gravity of the offense, the fact that appellant had a prior adjudication of delinquency and that he had subsequently turned 17 and would reach his 18th birthday on December 7, 1982, the state, on December 30, 1981, filed a request for transfer of the appellant to superior court for trial as an adult. Pursuant to Rule 12, the probation officer conducted a transfer investigation and prepared a transfer report prior to the transfer hearing which was set for April 27, 1982. At the April 27, 1982 hearing, the proceedings began with evidence of the assault as required by Rule 14(a). At its conclusion, the court found that the offense had been committed and that there was probable cause to believe that appellant had committed the offense. Appellant's trial counsel then requested that the court order further psychological evaluation as authorized by Rule 14(a). A further hearing on whether a transfer

---

1. Unless otherwise stated, "Rule" refers to the Rules of Procedure for Juvenile Court.

Rule 14. Transfer Hearing; Order

(a) The transfer hearing shall include evidence of the offense alleged, unless waived, and of the transfer investigation report. At the conclusion of the transfer hearing, the court shall determine whether an offense has been committed and that probable cause exists to believe that the child committed the offense alleged. If the court finds such probable cause or evidence of probable cause has been waived, upon its own motion or the motion of any interested party, it may order, in addition to the transfer investigation, an investigation including a mental and physical examination of the child, to be made by a public or private agency, or by a person qualified to make such examinations.

(b) The court may transfer the action for criminal prosecution to the appropriate court having jurisdiction of the offense if the court finds probable cause and reasonable grounds to believe that:

(1) The child is not amenable to treatment or rehabilitation as a delinquent child through available facilities; and

(2) The child is not commitable to an institution for mentally deficient, mentally defective or mentally ill persons; and

(3) The safety or interest of the public requires that the child be transferred for criminal prosecution.

**308**

should occur under the circumstances of Rule 14(b) was held on May 26, 1982, after which the juvenile court judge entered his findings, concluding with the following order:

> THE COURT FINDS reasonable grounds to believe that:
>
> 1. The child is not amenable to treatment or rehabilitation as a delinquent child through available facilities;
>
> 2. The child is not committable to an institution for mentally deficient, mentally defective or mentally ill persons; and
>
> 3. The safety or interest of the public requires that the child be transferred for criminal prosecution.

■ On June 9, 1982, a timely notice of appeal was filed and transcripts were requested. The state filed its response to the notice of appeal and the matter was considered by this court at conference on November 29, 1982, eight days before appellant's 18th birthday.[2]

On appeal, appellant argues that under the balancing test of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the standard of proof of "reasonable grounds to believe" established by Rule 14(b) is constitutionally impermissible and that a standard of "beyond a reasonable doubt" should be applied to this aspect of the transfer proceedings. In opposition, the state argues that not only would the "beyond a reasonable doubt" standard place an undue burden upon the state's resources, but it would probably be unconstitutional under *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). The state further argues that because the juvenile's guilt or innocence is not at issue at the transfer hearing, due process is satisfied by the higher standard of beyond a reasonable doubt which comes into play later during the trial in adult court or at the adjudication hearing if transfer is not ordered. Finally, the state

cites cases from Texas and Maryland upholding a "preponderance of the evidence" standard of proof in all aspects of a transfer hearing.

■ At this point it is necessary to differentiate the fact finding process involved in the dual aspects of a transfer hearing. The first (Rule 14(a)) deals with the issue of whether an offense has been committed and whether the juvenile has committed the offense. The standard of proof to this aspect of the inquiry is that of "probable cause." The second (Rule 14(b)) deals with whether the court, after finding probable cause that the juvenile has committed the offense charged, should transfer the juvenile to superior court for trial as an adult under the criteria established by Rule 14(b). Again, the standard of proof required here is "probable cause and reasonable grounds to believe."[3]

The appellant contends that the fact finding process involved under 14(b) requires a standard of proof of beyond a reasonable doubt. The state without differentiating between the different fact finding functions of Rule 14(a) and (b) argues for a preponderance of the evidence standard. Neither party zeroes in on whether "probable cause" is less of a standard than "preponderance of the evidence" and if so whether that standard is constitutionally adequate to remove a juvenile from the protection of the juvenile court.

■ We will now embark upon that inquiry. However, some background against which this inquiry is to be made is necessary. Arizona, as all other jurisdictions, has developed a juvenile court system based upon a sociological philosophy with its primary objective designed to aid the treatment and rehabilitation of youthful offenders. Appeal, in *Maricopa Cty. Juvenile No. J–86509,* 124 Ariz. 380, 604 P.2d 644 (App. 1979); *Kent v. United States, supra.* The

---

2. The fact that appellant subsequently reached his 18th birthday does not moot the transfer issue on appeal. *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

3. In our opinion, the terms "probable cause" and "reasonable grounds to believe" are synonomous and refer to the same standard of proof. *See United States v. Rubio,* 404 F.2d 678 (7th Cir.1968).

Arizona Constitution, Art. 6, § 6 places exclusive original jurisdiction in the Superior Court over all proceedings affecting children under 18 years of age who are accused of a crime. The article gives juvenile court judges the power "in their discretion" to suspend criminal prosecution for offenses committed by children and goes on to state that this power shall be as prescribed by law.. The legislature has clarified the juvenile court's powers by placing exclusive jurisdiction within that court over juveniles charged with criminal acts. *See* A.R.S. § 8–202(A) and § 8–222. Additionally, the Arizona Supreme Court, in the Rules of Procedure for Juvenile Court, has specifically limited juvenile court judges from transferring jurisdiction to the superior court except under the limited circumstances outlined in Rule 14. With this background in mind, it is well settled that the transfer hearing is divided into these two phases and that the first phase is analogous to a preliminary hearing. *Matter of Pima County, Juv. Act. No. J–47735–1,* 26 Ariz. App. 46, 546 P.2d 23 (1976). The safeguards against an erroneous fact finding provided by a subsequent trial and double jeopardy problems inherent in a higher standard (*see Breed v. Jones, supra*), convince us that the probable cause standard of Rule 14(a) is the correct burden of proof on the first phase of the transfer hearing. The question remains, however, whether the burden of proof of "reasonable grounds to believe" within Rule 14(b) is adequate to satisfy due process.[4] This is a proper inquiry. The majority of the United States Supreme Court in *Santosky v. Kramer,* 455

U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), relying upon *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), makes it clear that a state's chosen standard must be measured against the federal "fundamental fairness" doctrine embodied in the due process clause of the fourteenth amendment. Therefore, Arizona's "reasonable grounds to believe" standard must be measured in light of federal due process guidelines.[5] In determining whether a particular standard of proof satisfies due process, *Mathews v. Eldridge, supra,* held that three factors must be considered: (1) the private interest affected by the proceeding; (2) the risk of error created by the state's chosen procedure; and (3) the countervailing governmental interest supporting the use of the challenged procedure.

Before applying the *Eldridge* factors to Arizona's "reasonable grounds to believe" standard, we first address appellant's argument that the proper standard is "beyond a reasonable doubt". In *Addington v. Texas, supra,* the supreme court was concerned with the minimum burden of proof required in a civil proceeding under state law to commit an individual involuntarily for an indefinite period to a state mental hospital. The court rejected a "beyond a reasonable doubt" standard because it seriously questioned whether a state could ever prove beyond a reasonable doubt that an individual is both mentally ill and likely to be dangerous. The transfer criteria of Rule 14(b) are analogous to commitment proceedings in that the juvenile's social background

---

4. By order filed November 23, 1982, the Arizona Supreme Court amended Rule 17 effective December 1, 1982 to read as follows:

   *Burden of Proof*

   The burdens of proof in juvenile proceedings, other than transfer hearings, shall be:

   (1) Beyond a reasonable doubt, as to delinquency matters involving criminal offenses and incorrigibility;

   (2) By clear and convincing evidence, as to matters concerning the termination of the parent-child relationship; and

   (3) By a preponderance of the evidence, as to all other types of proceedings.

   This amendment was designed to comply with the burden of proof in termination pro-

ceedings required by *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). There is no indication that the court considered the issue before us in amending this rule or that the "preponderance of evidence" standard established by subsection 3 was intended to overrule or modify the "probable cause" standard established by Rule 14(b).

5. We also point out that this court has the power and responsibility to determine the validity and constitutionality of rules promulgated by the Arizona Supreme Court when a case before this court raises the issue. *State v. Meek,* 9 Ariz.App. 149, 450 P.2d 115 (1969).

and psychological evaluation are to a large extent based upon impressions drawn from the subjective analysis of a psychologist or probation officer. Thus, for the same reasons outlined in *Addington,* we find that the standard of "beyond a reasonable doubt" is an unrealistic burden of proof to be applied in a transfer hearing.

Since the state's position is predicated upon an argument that preponderance of the evidence is sufficient to satisfy a Rule 14(b) determination, and the Rule itself speaks in terms of probable cause and reason to believe, we must first determine whether the standards of proof established by these terms are equal.

While it is difficult to articulate what are basically conceptual criteria, probable cause refers to that state of mind which requires only a level of probability, that is, given a certain set of facts, and circumstances, a person of reasonable caution would hold a belief that the facts as perceived are probably true. *State v. Brazil,* 18 Ariz.App. 545, 504 P.2d 76 (1972); *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

Preponderance of the evidence, on the other hand, requires something more than probabilities. This standard requires that the proof be such that the state of mind of a person of reasonable caution be satisfied and convinced of the truth of the matter. *Cole v. Town of Miami,* 52 Ariz. 488, 83 P.2d 997 (1938). We therefore conclude that while the difference of the standards of proof between probable cause and preponderance of the evidence may be hazy, a standard of proof based upon preponderance of the evidence is greater than a standard based on probable cause.

We therefore reject the state's implied contention that Rule 14(b) establishes a "preponderance of the evidence" standard and focus upon whether the stated standard of "reason to believe," which the juvenile judge found, satisfies due process.

In making this evaluation under U.S. Supreme Court guidelines of due process, we must first identify the nature of the private interest threatened (juvenile's right to be treated as a juvenile for otherwise criminal acts) and the permanency of the threatened loss. *Santosky v. Kramer, supra; Mathews v. Eldridge, supra.*

"It is clear beyond dispute that the waiver of jurisdiction [by the juvenile court] is a 'critically important' action determining vitally important statutory rights of the juvenile." *Kent v. United States,* 383 U.S. at 556, 86 S.Ct. at 1055, 16 L.Ed.2d at 94. Arizona's statutory scheme provides "original and exclusive jurisdiction" in the juvenile court and this jurisdiction confers special rights and immunities to the juvenile. Although a juvenile charged with delinquency, or found to be delinquent, may be confined, the confinement must be in a detention center separate from adults who have been charged with or convicted of crimes. A.R.S. § 8–226. The adjudication of delinquency is not deemed a conviction of crime and does not result in the same consequences as an adult's conviction such as loss of civil rights or use of the adjudication as a prior conviction. A.R.S. § 8–207. Additionally, the record of delinquency may be destroyed under appropriate circumstances upon application to the juvenile court and the potential length of confinement may not extend beyond the child's eighteenth birthday. *Appeal, in Maricopa Cty. Juvenile No. J–86509,* 124 Ariz. 377, 604 P.2d 641 (1979). A.R.S. § 8–247.[6] Finally, the juve-

---

**6.** This does not always benefit the child. In *Kent,* the difference between transfer meant the difference in a five-year confinement and a potential death sentence. On the other hand, in the case of Appeal, in *Maricopa Cty. Juvenile No. J–86509, supra,* the fifteen year old juvenile was charged with shoplifting. At that time, juveniles were subject to juvenile court jurisdiction until age twenty-one. Thus, if treated as a juvenile, there was potential commitment

for more than five years for an act which if done by an adult would constitute a misdemeanor with a maximum punishment at that time of a six-month confinement and a fine of $300. These extremes exemplify why standards of proof may not be determined on a case by case basis. In determining the proper standard of proof, the risk of error inherent in the truth finding process must be applied to the generality of cases and not the rare exceptions

nile is shielded from publicity (Rule 4) and the juvenile court judge has considerable discretion in disposition in that the delinquent child may be placed in care of its parents, the probation department, a reputable citizen, a private agency, or the Department of Corrections. A.R.S. § 8–241. Thus, the private interest involved is commanding.

■ As to permanency of the transfer decision, the transfer is irrevocable unless reversed on appeal. Rule 24. Additionally, as to any subsequently filed charges against the juvenile, the previous decision to transfer would weigh heavily, if not decisively in the subsequent decision to transfer not only because of the previous factual finding but because at that point the child would have been cast into the environment of the adult system. Considering all these factors, plus the fact that prior to the actual decision of transfer, both the state and the child have an interest in maintaining the *parens patriae* relationship, we conclude that the first factor of the *Eldridge* test favors the use of a standard that is greater than the mere "probabilities" inherent in the probable cause and reasonable grounds to believe standard.

■ Turning to the second *Eldridge* factor—the risk of error created by the state's chosen procedure—we again find that the standard based upon probabilities is inadequate.

The decision to transfer is an adversary proceeding initiated by a request to transfer being filed by the county attorney or the probation officer. Rule 12. Once the transfer is requested, the juvenile probation officer conducts a transfer investigation and transfer report evaluating the child, including the child's social background and any previous history of delinquency. Under this procedure, the juvenile is in a disadvantageous position because the probation officer who prepares the transfer report, may have initially filed the petition, works directly for the juvenile court judge, (A.R.S.

§ 8–203), and has full access to the state's resources in evaluation of the child. This potential conflict between the probation officer and the child, creates a risk of error in favor of the state which weighs against maintaining a burden of proof based upon probabilities. Additionally, as discussed earlier, the quality of the evidence to be evaluated is by its nature, imprecise and results in a great deal of discretion being placed in the trial court. We also note a tendency to relax the quality of evidence admissible in a transfer hearing. *See Matter of Pima County, Juv. Act. No. J–47735–1, supra,* where the court inferred that a finding of prior delinquency was admissible even though there was no showing that the child had been represented by counsel in the prior proceeding or had waived counsel. Thus, we conclude that the risk of error weighs in the state's favor and does not support the standard of proof adopted.

■ We recognize that the differences involved in burdens of proof such as "reasonable grounds to believe" and "preponderance of the evidence" do not always make a great difference in the outcome of a particular case. However, the adoption of the standard of proof is more than a futile semantical exercise. In cases involving individual rights, the standard of proof reflects the value society places on those rights. *Addington v. Texas, supra.* Here, the "reasonable grounds to believe" standard requires only a threshold factual accuracy which does not adequately impress upon the fact finder the importance of the decision involved and the proper allocation of risk of error. If error falls against the child, it is ejected from the *parens patriae* umbrella of the juvenile court. The sociological atmosphere which is directed towards rehabilitation is lost as the child is cast into the adult criminal arena. In contrast, if error falls against the government, the criminal offender is not removed from the state's grasp, there is still a delinquency hearing to face. If adjudicated delinquent,

so that the litigants and the fact finder know at the outset of the proceeding how the risk of error will be allocated and the standard of

proof necessary to be met. *Santosky v. Kramer, supra.*

the juvenile faces a potential loss of liberty and a stigma attaches. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

■ Turning to the final *Eldridge* factor—the governmental interest involved in the state's chosen procedure—we again find no compelling argument in favor of maintaining the existing standard. Until the juvenile is actually transferred, the government shares the child's interest in the *parens patriae* relationship between the child and the state. It is only after the decision to transfer is made that the parties' interests diverge and as indicated earlier, if error is made against the state, the consequences are not so substantial as total release.

■ Additionally, a raising of the standard would not create any substantial fiscal or administrative burden upon the state such as is involved when a procedural right such as right to counsel is imposed. Although a higher standard of proof may impose some limited increase in the state's burden of mustering its evidence, the primary change would be the conceptual impression upon the fact finder of the degree of correctness expected in the factual conclusions. Thus, we conclude that Arizona's "reasonable grounds to believe" standard of Rule 14(b) does not meet minimum standards of due process under the fourteenth amendment and therefore is unconstitutional.

Earlier, we disposed of the appellant's argument that the proper standard should be "beyond a reasonable doubt". After reviewing the *Eldridge* factors, we conclude that the minimum standard permissible is "preponderance of the evidence". While

the private interest involved in a transfer hearing is substantial, the loss of liberty and the stigma attached to a determination of delinquency are similar to that involved in a determination of guilt for an adult. *In re Winship, supra.* Although the juvenile court system is directed toward rehabilitation, it complements the very vital interest of the state in its enforcement of its criminal laws. The inherent difficulty in proving transfer criteria to a high degree of correctness also weighs against a burden of proof greater than a preponderance of the evidence. Additionally, because the transfer hearing does not determine guilt and the factors weighing against transfer may be considered by the trial judge at sentencing if a criminal prosecution is brought in adult court, we conclude that a "preponderance of the evidence" standard is adequate. *Accord In re Bobby C.,* 48 Md.App. 249, 426 A.2d 435 (1981); *Strange v. State,* 616 S.W.2d 951 (Tex.Civ.App.1981).

■ The usual procedure upon a reversal of a transfer order is to remand the matter to the juvenile court for a new hearing. However, because appellant has now passed his eighteenth birthday and the juvenile court no longer has jurisdiction, Appeal, in *Maricopa Cty. Juvenile No. J–86509,* 124 Ariz. 377, 604 P.2d 641 (1979), the order of transfer is vacated.

CONTRERAS, J., concurs.

BROOKS, Judge, dissenting.

Appellant contends that the "reasonable grounds to believe"[1] standard of proof embodied in Rule 14(b) is not fundamentally fair and is violative of due process and that a standard of "beyond a reasonable doubt"

---

1. Rule 14(b) provides that the court may transfer the action for criminal prosecution if the court finds "probable cause and reasonable grounds to believe" that the three factors in Rule 14(b) are present. It is not clear whether the standard to be applied in this determination is "reasonable grounds to believe" or whether the standard includes *both* "probable cause" and "reasonable grounds to believe." It can be argued that the phrase "probable cause" in Rule 14(b) applies to the probable cause determination made under Rule 14(a) and that the

Rule 14(b) determination is to be made based on "reasonable grounds to believe." This issue, however, is immaterial to this matter because, as the majority points out, the terms "reasonable grounds" and "probable cause" are substantial equivalents of the same meaning. *See Draper v. United States,* 358 U.S. 307, 310 n. 3, 79 S.Ct. 329, 331 n. 3, 3 L.Ed.2d 327 (1959). For the purpose of this opinion, "reasonable grounds to believe" will be referred to as the standard embodied in Rule 14(b).

should be applied to this aspect of the transfer proceedings. The state responds, and the majority opinion concludes, that the standard of "beyond a reasonable doubt" is an unrealistic burden of proof to be applied in a transfer hearing. I agree with this conclusion. The majority, however, makes the further conclusion that the stated standard in Rule 14(b) of "reasonable grounds to believe" is a lesser standard than "preponderance of the evidence" and that this lesser standard does not satisfy due process requirements. From this conclusion I respectfully dissent.

In concluding that the "reasonable grounds to believe" standard of Rule 14(b) does not meet minimum standards of due process, the majority analyzed each of the three factors set forth in *Mathews v. Eldridge.*[2] The second factor is the critical determination in this matter. The majority concludes that a risk of error is present in the provided standard due to a "potential conflict between the probation officer and the child", a "great deal of discretion [which is] placed in the trial court" due to the imprecise quality of evidence and the fact that "the 'reasonable grounds to believe' standard requires only a threshold factual accuracy which does not adequately impress upon the fact finder the importance of the decision involved and the proper allocation of risk of error."

In determining the propriety of a particular standard of proof in a given case, however, it is not enough simply to say that we are trying to minimize the risk of error. *See Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 1411, 71 L.Ed.2d 599 (1982) (Rehnquist, J., dissenting opinion). Indeed, the second *Eldridge* factor provides that due process requires consideration of "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or

substitute procedural safeguards." *Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903. It is clear that the *Eldridge* test requires consideration of *both* the risk of erroneous deprivation of private interests *and* the likelihood that a substitute procedure or higher evidentiary standard would reduce that risk. *See Santosky v. Kramer,* 102 S.Ct. at 1398.

I agree with the majority's analysis of the first *Eldridge* factor in which it finds that the juvenile has a critical interest in the transfer decision. I also find that under the third *Eldridge* factor, the state does not have a countervailing interest in imposing a "lesser standard of proof" on the transfer proceedings. The second *Eldridge* factor, however, is most significant. I find that the probable value of substituting "preponderance of the evidence" for "reasonable grounds to believe" is negligible and that the provided procedures regarding transfer of a juvenile for criminal prosecution meet the minimum requirements of due process.

I initially suggest that the majority is engaging in nothing more than a semantical exercise when it finds that a "preponderance of the evidence" standard of proof requires something more than probabilities and that this standard meets minimum requirements of due process while a standard based on "reasonable grounds to believe" does not. The majority relies on *Cole v. Town of Miami,* 52 Ariz. 488, 83 P.2d 997 (1938) for its definition of "preponderance of the evidence." The actual definition provided in that case is "such proof as satisfies the conscience and carries conviction to an intelligent mind." *Id.* at 497, 83 P.2d at 1001. Contrary to the majority opinion, there is no requirement under the "preponderance of the evidence" standard that a fact finder "be satisfied and convinced of the truth of the matter." The more common and judicially accepted definition of

**2.** "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

this test is whether the fact sought to be proved is more probably true than not true. *See, e.g., Todd v. Weikle,* 36 Md.App. 663, 376 A.2d 104, 108 (1977); *Appeal of Tucker,* 538 P.2d 626, 629 (Okl.App.1975). Indeed, the Arizona Supreme Court in *Cole* concluded that "the ultimate test is, does the evidence convince the trier of fact that one theory of the case is more probable than the other." *Cole v. Town of Miami,* 52 Ariz. at 497, 83 P.2d at 1001. Contrary to the majority's conclusion, the "preponderance of the evidence" standard *is* based on "mere probabilities" in the same manner as the "probable cause" standard and the "reasonable grounds to believe" standard.[3]

Notwithstanding the semantical discussion, assuming *arguendo,* that "reasonable grounds to believe" requires something less than a "preponderance of the evidence", the question still remains whether the existing procedures are fundamentally fair and in compliance with minimum due process requirements. *See Mathews v. Eldridge,* 424 U.S. at 335, 343, 96 S.Ct. at 903, 907.

It is established that the procedures of a transfer hearing must measure up to the essentials of due process. *Kent v. United States,* 383 U.S. 541, 562, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). Due process of law, however, is a flexible principle. The requirements which it imposes upon governmental actions vary with the situations to which it applies. As the United States Supreme Court has recognized, "not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

Given this flexibility, it is obvious that a proper due process inquiry cannot be made by focusing upon one narrow provision of the challenged statutory scheme. Such a focus threatens to overlook factors which may introduce constitutionally adequate protections into a particular government action. Courts must examine *all* procedural protections offered by the state, and must assess the cumulative effect of such safeguards. The courts must consider "the fairness and reliability of the existing ... procedures" before holding that the Constitution requires more. *Mathews v. Eldridge,* 424 U.S. at 343, 96 S.Ct. at 907. Only through such a broad inquiry may courts determine whether a challenged governmental action satisfies the due process requirement of "fundamental fairness". *See Santosky v. Kramer,* 102 S.Ct. at 1405. (Rehnquist, J., dissenting opinion).

In determining which essentials of due process and fair treatment are required in *delinquency* adjudications, the emphasis is on accurate fact finding. *Matter of Pima County Juvenile Action No. 63212–2,* 129 Ariz. 371, 631 P.2d 526 (1981). Although the standard of proof is not "beyond a reasonable doubt", as conceded by the majority, a similar emphasis on accurate fact finding is present in the procedures involved in a transfer hearing. Additional procedural safeguards are provided in Rule 14(c), which requires that upon transfer, the juvenile court *shall state the reasons* for the transfer. This additional procedural requirement insures that the transfer procedure has constitutionally adequate protections.

Although it is established that the procedures of a transfer hearing must satisfy due process requirements, the United States Supreme Court has made the following comment regarding the quantum of evidence that must support a decision to transfer a juvenile:

> [T]he Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court.

*Breed v. Jones,* 421 U.S. 519, 537, 95 S.Ct. 1779, 1790, 44 L.Ed.2d 346 (1975). I disagree with the majority's conclusion that a transfer order based on a "preponderance of the evidence" meets minimum requirements of due process but that a transfer

---

**3.** Compare the definition of preponderance of the evidence (whether one theory of the case is more probable than the other) with the requirements for a showing of "probable cause" under Rule 14(a). *In Matter of Juvenile Court No.* *6358–4,* 14 Ariz.App. 466, 471, 484 P.2d 235, 240 (1971), Division Two of this court said that "[i]n order to arrive at a conclusion of probable cause there must be more evidence for, rather than against, guilt...."

order based on "reasonable grounds to believe" is constitutionally infirm.

Article 6, § 15 of the Arizona Constitution provides that juvenile court judges may, *in their discretion,* suspend criminal prosecution of children under the age of eighteen and that the powers of such judges to control such children shall be as provided by law. I find that the procedures regarding transfer for criminal prosecution provided in Rules 12, 13 and 14 of the Arizona Rules of Procedure for the Juvenile Court meet minimum requirements of due process. I would affirm the order which transferred the juvenile for criminal prosecution.