STATE of Utah, IN the INTEREST OF CLATTERBUCK, Nick Alan.

No. 19937.

Supreme Court of Utah.

April 18, 1985.

Michael D. Esplin, Provo, Kent O. Willis, Orem, for appellant.

David L. Wilkinson, Atty. Gen., Frank Matteson, Asst. Atty. Gen., Salt Lake City, Noall T. Wootton, Co. Atty., Steve B. Killpack, Asst. Co. Atty., Provo, for respondent.

ZIMMERMAN, Justice:

This is an appeal by defendant Nick Alan Clatterbuck seeking reversal of a Third District Juvenile Court order entered on April 23, 1984, certifying that he be tried as an adult pursuant to section 78–3a–25 of the Code. U.C.A., 1953, § 78–3a–25 (Supp. 1983). Defendant contends that the certification statute deprives him of due process of law, that the juvenile court's findings and order do not comply with the statutory requirements of section 78–3a–25, and that his right to equal protection of the laws has been violated by the policies of the juvenile court or the Division of Youth Corrections. After reviewing the record, we find the defendant's contentions to be without merit and affirm the certification order.

Defendant, 15 years old at the time of his arrest, is charged with two counts of criminal homicide, murder in the first degree, for the shooting deaths on February 28, 1984, of a Utah County couple in whose home he had been placed for foster care. On April 23, 1984, a hearing was held in the district juvenile court for Utah County to determine whether defendant should be tried as an adult. The hearing included testimony from ten witnesses. At its conclusion, the judge announced his findings from the bench and certified defendant to the district court for trial as an adult. He then prepared a written document entitled

"Findings and Order." The findings conclusorily stated that the nature of defendant's crimes established that he was not amenable to treatment in the juvenile system and that certification of defendant as an adult would better serve both society's and defendant's interests.

Defendant mounts several challenges to the certification. He first claims that the pertinent statute, section 78–3a–25 of the Code, is facially unconstitutional because it is silent on two critical aspects of the certification proceeding: first, the statute fails to articulate the substantive standard that must be satisfied in order to certify the juvenile's case to district court; and second, the statute fails to set forth the burden of proof that must be met by the State to establish that certification is appropriate. Defendant argues that as a result of these defects the statute vests virtually unfettered discretion regarding certification in the juvenile court judge. Because the juvenile system affords defendants certain advantages over the adult criminal system, a statute permitting arbitrary deprivation of those advantages, argues defendant, deprives juvenile defendants of due process of law under both the United States Constitution amend. XIV and the Utah Constitution art. I, § 7. *See Kent v. United States*, 383 U.S. 541, 552–57, 86 S.Ct. 1045, 1052–55, 16 L.Ed.2d 84 (1966).

■ We agree that whether a juvenile is to be transferred to the adult system is a " 'critically important' question" and that a juvenile must be afforded appropriate procedural protections when that determination is made. *See Kent v. United States*, 383 U.S. at 553, 86 S.Ct. at 1053; *cf. State in re Schreuder*, Utah, 649 P.2d 19, 23 (1982). However, after considering defendant's contentions, we find that he was afforded those protections.

■ Section 78–3a–25 empowers the juvenile court to certify for trial as an adult a person 14 years of age or older who commits an act which would be a felony if committed by an adult, but only "if the court after full investigation and a hearing finds that it would be contrary to the best interests of the child or of the public [for the juvenile court] to retain jurisdiction...." U.C.A., 1953, § 78–3a–25(1) (Supp.1983). Contrary to defendant's first contention, the statute explicitly provides a substantive standard for certification: the juvenile court must find that continued retention of jurisdiction would be "contrary to the best interests of the child or of the public." This language adequately spells out the parameters within which the juvenile court must exercise its discretion and does not deny defendant due process. *See State in re Schreuder*, 649 P.2d at 25. We have previously upheld the constitutionality of this standard in the face of a similar due process challenge and see no reason to depart from that decision. *State in re Salas*, Utah, 520 P.2d 874, 876 (1974).

■ Defendant's second due process contention, that the statute does not specify the burden of proof that the State must meet to justify certification, is technically correct. Due process considerations require that a juvenile judge not be free to use any standard he may choose in deciding to certify a defendant. *See, e.g., In re Maricopa County Juvenile Action No. J–84984*, App., 138 Ariz. 305, 674 P.2d 859, 865–66 (1983). However, the absence of a standard regarding the burden of proof in section 78–3a–25 is not fatal to the statute's constitutionality. The Board of Juvenile Court Judges has adopted a rule of procedure that provides:

> The standard of proof required in all proceedings before Court under Section 55–10–77, subsection (1), UCA 1953 as amended (relating to the violation of a law) [currently found in section 78–3a–16(1)] shall be beyond a reasonable doubt. *In all other cases the standard of proof required for adjudication shall be clear and convincing evidence.*

Utah Juv.Ct.R.Pro. 21 (1976) (emphasis added). Without deciding what the minimum permissible standard of proof might be, we hold that section 78–3a–25 fully satisfies the due process requirements of our state constitution, Utah Const. art. I, § 7, and any federal due process require-

ments when proceedings are conducted pursuant to a clear and convincing evidence standard. *See generally, In re Seven Minors,* Nev., 664 P.2d 947, 953 (1983); *but see In re Maricopa County Juvenile Action No. J–84984,* 674 P.2d at 859. So long as section 78–3a–25 is administered in conjunction with Rule 21, it is constitutional as applied.

In the case before us, the juvenile court did not expressly state the standard of proof that the State must meet in order to justify its certification order. Plainly, in view of the statute's silence on this matter, the court ought to have stated it, and we commend such a step to the juvenile courts for the future. However, the court's failure to take this step does not require reversal for several reasons. First, in this case, defendant does not contend that the juvenile court disregarded Rule 21's requirement that certifications be based only on clear and convincing evidence. Second, defendant's counsel conceded at oral argument that there was ample evidence in the record to support a finding by clear and convincing evidence that certification was proper. In essence, we have no grounds for doubting the appropriateness of the juvenile court's action in this case. Therefore, we find that under the statute as applied, defendant's due process rights have not been violated because of a lack of standards.

Defendant next attacks the juvenile court's "Findings and Order." Section 78–3a–25(2) requires that before the juvenile court can certify a juvenile, it must take into account the factors listed in the statute.[1] While a defendant may be properly certified upon a finding of "any one or more" of those factors, the court "shall consider" all of them before arriving at its decision. U.C.A., 1953, § 78–3a–25(2), (4) (Supp.1983). Defendant contends that due process requires that the juvenile court's findings be sufficiently detailed to permit meaningful appellate review and to expose the underpinnings of the certification decision. In the present case, he argues, the

findings are inadequate under *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), for two reasons. First, they provide no basis upon which this Court can determine whether the juvenile court actually considered all of the factors listed in the statute. Second, they merely state the conclusions reached by the court rather than setting out the specific factual bases for the court's decision.

*Kent v. United States* does not provide the support defendant seeks. There, the Supreme Court reviewed a juvenile's certification to adult court under the terms of a District of Columbia statute that permitted such a transfer after a "full investigation," but the statute did not specify either the factors to be considered or the standard to be met. The lower court had transferred the juvenile summarily, without holding any hearing, entering any findings of fact, or stating any reasons for the transfer. 383 U.S. at 546, 86 S.Ct. at 1049. The Supreme Court, basing its decision primarily on its interpretation of the statute's language and intent "in the context of constitutional principles relating to due process," held that at a minimum, such a transfer could be made only after a full hearing at which counsel was permitted to be present and upon "a statement of the reasons motivating the [transfer to the adult system]." 383 U.S. at 557, 86 S.Ct. at 1055.

What concerns us here is *Kent's* requirement that a court articulate its reasons for transferring a juvenile out of the juvenile system. The Court held that such a statement of reasons was necessary to permit meaningful appellate review and required that the findings be detailed enough to demonstrate that a full investigation had been made and that the statutory requirements had been met. 383 U.S. at 561, 86 S.Ct. at 1057. As a guide to the factors the Court though were pertinent to a transfer decision, it appended to its opinion a policy memorandum from the District of Columbia Juvenile Court listing a number of such factors.

---

**1.** The factors listed in the statute are set forth *infra.*

A cursory review of the Utah certification statute shows that it closely follows *Kent's* reasoning and suggestions. There is a list of factors similar to those appended to the *Kent* opinion that a juvenile judge "shall consider." There is a requirement that there be a "full investigation and hearing." There is a right to counsel. *See* U.C.A., 1953, §§ 78–3a–25, –35 (Supp.1983). There is not, however, a statutory requirement that the transferring court support its decision with a statement of reasons and findings. Section 78–3a–25(4) provides only that certification is proper when the court finds applicable "any one or more" of the factors required for consideration under section 78–3a–25(2).[2]

■ All certification orders are subject to appellate review and must provide this Court with sufficient information to permit us to perform that function. Therefore, in light of the minimum standards set by *Kent* and the explicit mandate of our statute that the juvenile courts "shall consider" all the specified factors and "find" one or more of them satisfied before certification, in the exercise of our inherent supervisory powers over the courts of this state, we hold that orders under section 78–3a–25 must contain a sufficiently detailed statement of facts to permit us to determine

that a full investigation has been made and that each of the statutory factors has been considered.[3] In addition, we hold that the juvenile court must specify which statutory factors it has relied upon in deciding to certify, and it must explain why it thought those factors provided sufficient reason to justify certification.[4]

■ Measured by the foregoing standard, we find that the juvenile court's findings and order in this case are insufficient. There is no indication in the findings that a full investigation was undertaken or that all of the required statutory factors were actually considered. The court's findings, rather than reflecting a thorough consideration of the facts in light of all the statutory factors, merely recite reasons or conclusions framed in terms of some, but not all, of these factors.[5] While the findings do provide us with some insight into the juvenile court's reasoning process, that insight is minimal. The court's "Findings and Order," then, fails to meet the standard we have set forth for findings and barely suffices for purposes of determining the court's rationale.

■ Under other circumstances, we would remand the matter for further findings and reasons. However, a remand is

2. We note that Rule 7.6 of the Juvenile Court Rules of Procedure requires that if a judge enters a certification order, the judge "shall set forth his reasons for certification."

3. The juvenile court may, at its discretion, maintain the confidentiality of its factual findings by ordering the pertinent documents sealed in order to prevent possible prejudice to defendant in subsequent proceedings.

4. In addition, as previously noted, the court ought to state whether its finding that certification is appropriate is supported by clear and convincing evidence.

5. The full text of the court's "Findings and Order" reads as follows:

This matter came before the court on a Motion for Certification filed by the State.

After having carefully weighed the evidence presented at hearing, it is the findings of this Court that:

1) the above cited juvenile is over the age of fourteen years;

2) he is charged with offenses which would constitute felonies for an adult;

3) he has been the recipient of extensive resources of the Juvenile Court and that said resources appear not to have been successful in his rehabilitation;

4) the nature of the offenses with which he is charged demonstrate[s] a high degree of criminal sophistication on the part of the juvenile and would appear to clearly establish that he is not amenable to treatment within the Juvenile Justice System;

5) the best interests of neither the young man nor society would be served by retaining jurisdiction over these particular charges within the Juvenile Court System.

IT IS, THEREFORE ORDERED that the said Nick Alan Clatterbuck be certified to be tried as an adult in the courts of the State of Utah, that he be taken before a committing magistrate to answer said charges and that he be detained at the Utah County Youth Home until such time as he appears before said committing magistrate.

Dated this 23rd day of April, 1984.

**1082**

unnecessary here. Defendant has nowhere challenged the sufficiency of the evidence to support the certification order. Nor has he contended that a full hearing was not held or that the juvenile court acted in an arbitrary or capricious manner in rendering its decision. In fact, at oral argument defendant's counsel conceded that although he disliked the juvenile court's findings and its decision to certify, ample record evidence supported them both. Defendant's challenge to the sufficiency of the findings and order, then, is narrowly limited and rather formal.

■ In reviewing appeals from juvenile courts, we sit as a court of equity. As such, we exercise the "broadest scope of appellate review" and are authorized to review the facts as well as the law. *State in re L.G.W.*, Utah, 641 P.2d 127, 130 (1982); *see also State in re Schreuder*, Utah, 649 P.2d 19, 24 (1982). Here we choose to review the record to determine whether the findings and order are adequately supported by the evidence, rather than waste judicial resources with a remand. *See State in re Schreuder*, 649 P.2d at 25.

The statute requires the juvenile court to consider the following factors:

(a) The seriousness of the offense and whether the protection of the community requires isolation of the child beyond that afforded by juvenile facilities;

(b) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(c) Whether the alleged offense was against persons or property, greater weight being given to offenses against persons;

(d) The maturity of the juvenile as determined by considerations of his home, environment, emotional attitude, and pattern of living;

(e) The record and previous history of the juvenile;

(f) The likelihood of rehabilitation of the juvenile by use of facilities available to the juvenile court; and

(g) The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults who will be charged with a crime in the district court. U.C.A., 1953, § 78–3a–25(2) (Supp.1983).

■ A review of the record compiled at the two and one-half day hearing shows ample evidence concerning each of the pertinent factors and leads us to the firm conclusion that the judge adequately considered them. Factors (c) and (g) were clearly considered. Defendant murdered his foster parents, a crime clearly against persons, and did so acting alone. Factors (c) and (g), then, require no further analysis.

A Second District Juvenile Court probation officer, who had supervised defendant for two years, testified about defendant's record and previous history and also spoke to the issue of defendant's maturity. The officer outlined a lifestyle pattern and attitudes that he described as atypical of 13 to 15 year olds. Defendant continually ran away from home and spent nights at a time hanging around stores that were open late, shoplifted a number of times while he was on the run, knew how to drive a car and had stolen cars on several occasions, failed to complete any grades beyond elementary school, and did not respond to the normal sorts of consequences that would deter a person of his age from continuing to behave as he did. Evidence concerning factors (d) and (e), then, appears in the record.

That the crime was committed in an aggressive, violent, and willful manner is plain. The assistant medical examiner for the State, who performed autopsies on both victims, testified that the female died of six close-range gunshot wounds to the face and head. There was also a deep knife wound to the pubic area and a cross had been carved into the victim's thigh 30 minutes or more after death. The male victim incurred 16 gunshot wounds, 5 of which were to the head and all of which were inflicted over a period of time in excess of 30 minutes. A detective for the Utah

County sheriff's office further testified that the woman's body had been moved after death and that most of her clothing had then been cut or torn off. The male victim died in his bed; two Polaroid pictures of him, with the blankets adjusted somewhat differently in each picture, were found in the bedroom. Clearly, evidence of factor (b) was presented to the judge.

Several witnesses addressed factor (f), testifying about the likelihood of rehabilitating defendant within the juvenile justice system. The probation officer stated that defendant had been offered the full range of juvenile court services while he was on probation. He could think of no further options within the system that might assist in defendant's rehabilitation.

The director of the state Division of Youth Corrections also testified, stating that the treatment programs currently in use at the secure juvenile facilities, which contemplated only short-term incarceration, would be inappropriate for defendant, whose rehabilitation needs were both long term and continuous.

A psychiatrist who had treated defendant during the two-month period of residential placement and who had conducted a complete neurological and psychiatric examination testified that defendant suffered from a socialized and aggressive conduct disorder, a passive-aggressive personality disorder, and a neurologically based attention deficit disorder. The doctor described these disorders in considerable detail, stressing the lack of value formation, absence of conscience, and long-term, continuous need for treatment. Based on his 33 years of experience within the juvenile court system, the psychiatrist testified that defendant was not an appropriate candidate for placement in a juvenile facility. The treatment defendant had received up to this time had been unsuccessful, and continued juvenile placement would hinder not only defendant's chances for rehabilitation, but would also negatively affect the juveniles with whom defendant would be incarcerated. Defendant's rehabilitation, according to the psychiatrist, will necessar-

ily extend into adulthood, and the adult prison system is more likely than the juvenile system to be able to provide the continuous treatment that defendant requires.

Finally, the record contains ample evidence that factor (a) was considered. The probation officer testified that defendant presented a long-term behavioral risk. The psychiatrist stated that defendant's placement in a secure facility for the protection of the community would in all likelihood be necessary beyond the age of 21. He further stated that authority figures with whom defendant interacted would be at especially high risk.

Our review of the record convinces us that the certification question was fully investigated, that abundant evidence was submitted on all relevant factors, and that the juvenile court had this evidence fully in mind when it decided to certify.

■ We next consider whether the juvenile court complied with section 78–3a–25(4), which authorizes the court to certify the juvenile only "upon making a finding of any one or more" of the listed factors. The court's findings and order reveal enough of its reasoning to demonstrate why it found that "one or more" of the factors justified certification. There is ample evidence to support that determination.

■ We turn finally to defendant's equal protection argument. He asserts that the Division of Youth Corrections has chosen to deal with all juveniles charged with homicide by automatically seeking their certification to district court. By so singling out one class of offenders, he contends, both the Division of Youth Corrections and the juvenile court violated defendant's right to equal protection of the law. Defendant, however, nowhere claims that the juvenile court relied on this alleged policy of the Division in arriving at its certification decision. Even a cursory reading of the record shows that while the juvenile court's written findings may be inadequate, the record itself reflects a considered and thoughtful approach by the

juvenile court to all of the statutory requirements as they relate to this defendant. Defendant was certified to the district court because of the individual particularities of his case and not because he was a member of a general class of homicide offenders. We therefore reject his equal protection claim.

For the foregoing reasons, the order of certification entered by the juvenile court is affirmed.

HALL, C.J., and HOWE and DURHAM, JJ., concur.

STEWART, Justice (concurring):

I do not disagree with the majority opinion that the record as a whole supports certification of Nick Alan Clatterbuck to stand trial as an adult.

Nevertheless, I believe that it should be emphasized that juvenile court judges are under a duty to make appropriate findings in certification proceedings. The point is not a mere technicality. As the majority opinion suggest, the findings made by the juvenile court are inadequate. It is the juvenile court, and not this Court, that is primarily charged with making the decision as to whether a juvenile should be certified to stand trial as an adult. Our function should be to determine whether the juvenile court misapplied the law or acted arbitrarily. The decision to certify a juvenile requires the exercise of sound discretion in light of the expertise of a juvenile court judge in dealing with juveniles and in light of the judge's knowledge of the effectiveness of available remedial programs. Juvenile court judges are far more expert in evaluating the multitude of factors that must be weighed than this Court is. I do not believe that this Court should make its own findings of fact and reach its own decision on the validity of a certification order on the basis of a cold record in an area of the law where we have no particular expertise except in the most rare cases. However, I agree that this is such a case.