In the Interest of R.R.D., a person under 18 years of age, Appellant.

No. 890216–CA.

Court of Appeals of Utah.

April 13, 1990.

---

Walter F. Bugden, Jr. (argued), Salt Lake City, for appellant.

R. Paul Van Dam, Atty. Gen., Sandra Sjogren (argued), Asst. Atty. Gen., for State of Utah.

## OPINION

Before BILLINGS, GREENWOOD and ORME, JJ.

ORME, Judge:

Appellant, R.R.D., appeals from a juvenile court decision to certify the criminal proceedings against him to the district court. We affirm.

## FACTS

R.R.D. turned 18 years old on December 24, 1989. The state alleges that, only three months prior to his eighteenth birthday, R.R.D. and a codefendant unlawfully entered the codefendant's family home and stole an automobile, firearms and other personal property. R.R.D. was charged in juvenile court with three crimes, each of which constitutes a second degree felony if committed by an adult. These felonies include burglary of a residence, in violation of Utah Code Ann. § 76-6-202 (1978); theft of firearms, in violation of Utah Code Ann § 76-6-404 (1978); and theft of an operable automobile, also in violation of § 76-6-404.

The state moved for certification to try R.R.D. as an adult in the district court. On March 13, 1989, the juvenile court held a certification hearing. At the hearing, defense counsel introduced evidence comparing R.R.D.'s conviction record with average conviction records of juveniles confined to juvenile court facilities. After hearing all of R.R.D.'s evidence and the state's evidence, the court granted the state's motion to certify pursuant to Utah Code Ann. § 78-3a-25(1) (1987).[1]

---

1. Utah Code Ann. § 78-3a-25(1) (1987) provides in pertinent part:

 If the petition in the case of a person 14 years of age or older alleges that he committed an act which would constitute a felony if committed by an adult, and if the court after full investigation and a hearing finds that it would be contrary to the best interests of the child or of the public to retain jurisdiction, the court may enter an order certifying to that effect and directing that the child be held for criminal proceedings in the district court, with a hearing before a committing magistrate to be held as in other felony cases.

In support of its decision, the court found that the alleged offenses were serious, that R.R.D. was a mature youth, that R.R.D.'s criminal record was extensive, and that R.R.D.'s criminal behavior had not diminished despite numerous rehabilitative attempts in the juvenile correction system. The court did not find the evidence comparing R.R.D. to other juvenile offenders to be helpful in its decision to certify. Summing up its findings, the court concluded

> that the defendant's record of from six to nine felony counts and several misdemeanors, coupled with a demonstrated inability on the defendant's part to internalize rehabilitation, mitigates strongly in favor of protecting the public, and of incarceration for a longer period of time than that normally available in Youth Corrections custody.

On appeal, R.R.D. argues that the evidence supporting the certification was not clear and convincing.[2] Moreover, he argues that the court committed reversible error by excluding from meaningful consideration comparative evidence of other juveniles within the juvenile court system. We address each of these arguments.

## CLEAR AND CONVINCING EVIDENCE FOR CERTIFICATION

■ Our review of juvenile court decisions is effectively governed by rule 52(a) of the Utah Rules of Civil Procedure. *See In re R.L.I.,* 771 P.2d 1068, 1070 (Utah 1989); *In re N.H.B.,* 777 P.2d 487, 493 (Utah Ct.App.1989). Accordingly, our task on appeal is to uphold the juvenile court's findings unless we find them to be "clearly erroneous," *id.,* notwithstanding the "clear and convincing" standard of proof below.[3] " 'Clearly erroneous' means that the findings are either against the clear weight of the evidence or induce a definite and firm conviction that a mistake has been made." *Id.* Because we find no such mistake in this case, we uphold the court's findings.

In most cases, certifications of juvenile court matters to a district court must comply with the provisions of Utah Code Ann. § 78–3a–25 (1987).[4] Those provisions provide, in pertinent part:

> (2) In considering whether or not to waive jurisdiction over the juvenile, the juvenile court *shall consider* the following factors:
>
> (a) the seriousness of the offense and whether the protection of the community requires isolation of the child beyond that afforded by juvenile facilities;
>
> (b) whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;
>
> (c) whether the alleged offense was against persons or property, greater weight being given to offenses against persons;
>
> (d) the maturity of the juvenile as determined by considerations of his home, environment, emotional attitude, and pattern of living;
>
> (e) the record and previous history of the juvenile;

---

**2.** The Juvenile Court Rules of Practice provide: "The standard of proof required for adjudication in all proceedings before this court [relating to criminal guilt] shall be beyond a reasonable doubt. In all other cases the standard of proof required for adjudication shall be by clear and convincing evidence." Utah Juv.Ct.R. 21. The Utah Supreme Court has determined that the "clear and convincing" standard of proof is an appropriate standard of proof for certification proceedings. *In re Clatterbuck,* 700 P.2d 1076, 1079–80 (Utah 1985). *See also In re N.H.B.,* 777 P.2d 487, 491 (Utah Ct.App.1989) (same standard applies to recall proceedings).

**3.** Though we are not unmindful of the "clear and convincing" burden of proof below, that burden does not alter, nor is it inconsistent with, the "clearly erroneous" standard of review on appeal. *Cf. Horton v. Horton,* 695 P.2d 102, 105 (Utah 1984) ("the standard of appellate review in equity cases, even where the level of the proof in the trial court is clear and convincing evidence, is that of clear preponderance"). *See also Von Hake v. Thomas,* 759 P.2d 1162, 1170 (Utah 1988).

**4.** The procedure for moving a case to the district court is different if the juvenile is 16 years of age or older and is charged with a more serious offense such as criminal homicide. *See* Utah Code Ann. § 78–3a–25(6) (1987).

(f) the likelihood of rehabilitation of the juvenile by use of facilities available to the juvenile court; and

(g) the desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults who will be charged with a crime in the district court.

(3) *The amount of weight to be given to each of the factors listed in Subsection (2) is discretionary with the court.*

(4) The juvenile court judge may enter an order certifying a juvenile to stand trial as an adult upon making a finding of any *one or more* of those factors set forth in Subsection (2).

*Id.* (emphasis added).

■ The Utah Supreme Court has held that the juvenile court must consider all of the factors contained in § 78–3a–25(2) before it makes its decision to certify. *In re Clatterbuck,* 700 P.2d 1076, 1080 (Utah 1985). However, that decision may be based upon as few as one of the factors. *Id. See also In re R.W.,* 717 P.2d 258, 260 (Utah 1986). Thus, as long as the juvenile court considered all of the potentially applicable factors in § 78–3a–25(2), and as long as there is sufficient evidence to support its decision to certify under at least one of the factors, we will not substitute our judgment for that of the juvenile court. *See id.* at 259.

The court's order in this case contained six pages of detailed findings specifically addressing each of the factors in § 78–3a–25(2) and stating reasons why the various factors, insofar as applicable, justified certification. *See Clatterbuck,* 700 P.2d at 1081 (providing guidelines for certification findings).

Section 78–3a–25(2) appears to provide seven distinct factors for the juvenile court to consider in a certification decision.

However, some of these ostensibly distinct factors are not so distinct or at least blur into others. Subsection (a) actually contains two factors for the court to consider. First, the court must consider the seriousness of the offense. Second, the court must consider whether the juvenile should be isolated for a longer period than afforded by the juvenile system. Moreover, subsections (b) and (c) actually set forth factors germane to the seriousness of the offense, a consideration explicitly treated in subsection (a). Thus, in our analysis, we will consider 1) the seriousness of the offense, including subsections (b) and (c) as components of that factor; 2) the need to isolate R.R.D. in the adult system; 3) the maturity of R.R.D.; 4) the record and previous history of R.R.D.; and 5) the likelihood of R.R.D.'s rehabilitation in the juvenile system.[5]

### 1. Seriousness of the Offense

■ The first part of § 78–3a–25(2)(a) requires a juvenile court to consider the seriousness of the offense. This factor allows the court to examine how serious the offense is within the class of certifiable offenses and also to consider the individual characteristics of the particular crime. The juvenile court focused on both of these considerations.

Section 78–3a–25(1) provides that a juvenile may be certified if the alleged offense "would constitute a felony if committed by an adult." *Id.* Thus, the class of certifiable offenses includes first, second, and third degree felonies. The court, while recognizing that the offenses were ones against property and not against persons, noted that the crimes were "never-the-less serious." Each of the alleged crimes in this case qualified as a second degree felony to which the legislature has attached a severe penalty.[6] Moreover, one of the

---

**5.** The juvenile court considered the subject treated in subsection (g) but determined that factor was inapplicable in this case. At the time of the hearing, the companion who allegedly assisted R.R.D. in the crime was not an adult and had not been certified to the district court.

**6.** Second degree felonies carry a maximum sentence of fifteen years. Utah Code Ann. § 76–3–203(2) (1989). The penalty for a crime and length of the confinement are certainly germane to the seriousness factor pertinent to a certification determination. *Cf. In re N.H.B.,* 777 P.2d 487, 493 (Utah Ct.App.1989) (length of

property crimes, burglary of a residence, is especially serious "due not only to the inherent danger to occupants during the commission of such an offense, but also to the value society places on the home." *Blango v. United States*, 373 A.2d 885, 888 (D.C. Ct.App.1977).[7] As certifiable offenses go, these offenses were clearly among the more serious ones.[8]

The court also focused on the specific details of the alleged crimes in this case. The court considered the state's argument that the crimes were committed in an "aggressive, violent, premeditated, or willful manner," but concluded there was no evidence to suggest that this either was or was not the case. Thus, the court was not persuaded in its decision by this argument.

One aspect of the offenses which did weigh into the court's decision was the victimization of the codefendant's parents. Defense counsel argued that this fact should weigh against the seriousness of the crime. The court took a different view, one which we find persuasive. It stated:

> [T]he victimization of those who ought to be closer and more highly respected or loved by the perpetrator may be taken as something of concern. How will the defendant treat the person or property of those who[m] he does not know if he is willing to vic[ti]mize those closest to him?

The court noted that R.R.D.'s criminal history suggests a movement away from victimizing those close to him to persons more

removed. "[T]he history of [R.R.D.] shows first, victimization of family, then of less related foster parents, and in the present case allegedly the parents of a peer." Certainly the court could take these facts into consideration in determining the seriousness of the alleged crimes in this case and the need to protect society. And as residential burglaries go, surely one involving the theft of dangerous weapons is more serious than, say, the theft of stereo equipment or power tools.

There was sufficient evidence in the record to sustain the court's findings supporting the conclusion that the charged crimes were serious and to rely upon this factor in its decision to certify.

### 2. Need to Isolate R.R.D. in Adult System

■ The second half of § 78–3a–25(2)(a) requires the juvenile court to consider whether the protection of the community requires R.R.D. to be isolated for a longer period than afforded by the juvenile system. The court noted that R.R.D. was 18 years old at the time of the certification hearing. At most, he could be held by the juvenile corrections system for less than three years—until his twenty-first birthday. Utah Code Ann. § 78–3a–42(1) (1989). Moreover, the court noted that the Youth Parole Board would likely release R.R.D. even before his twenty-first birthday.[9] The court concluded that if R.R.D. committed

---

confinement relevant to "seriousness-of-the-charge factor" in recall proceeding).

**7.** Defense counsel argues that this particular burglary was less serious than other burglaries because it occurred in the daytime and because the codefendant knew that his family was not home. We were unable to find anything in the record to support appellant's position that codefendant knew his family would not be home. Moreover, though these facts may lessen the seriousness of the offense somewhat, the fact that firearms were one object of the burglary significantly tips the balance the other way.

**8.** It should also be noted that very serious felonies, such as criminal homicide, aggravated burglary, etc., committed by juveniles 16 years of age and older, are not included in the same class of certifiable offenses because the legisla-

ture has created a different procedure for moving these cases to the adult system. *See* Utah Code Ann. § 78–3a–25(6) (1987).

**9.** Defendant argues the court erred in considering the Youth Parole Board's past parole practices with R.R.D. Testimony was admitted at trial to suggest that R.R.D. needed "quite a few years of help." Past practices with R.R.D. suggested that R.R.D. might possibly be paroled from the juvenile system after a very limited period of time and, in any event, he could not be confined within the juvenile system for longer than three years. The probable length of confinement in the juvenile and adult systems is certainly an appropriate consideration for the juvenile court in certification proceedings. *See In re R.W.*, 717 P.2d 258, 260 (Utah 1986). We do not believe it was error for the court to take these facts into account in its certification decision.

the crimes, he should be isolated for a longer period than the juvenile corrections system generally provided, both to protect society and to punish his behavior. We hold there was clear and convincing evidence to support the court's finding that the interests of society required confinement of R.R.D. for a period longer than that typically afforded by the juvenile court system.

### 3. Maturity

■ After hearing the evidence, the juvenile court determined that R.R.D. was a mature individual. The court found that he was excelling academically, albeit while under supervision, that his "educational performance demonstrate[d] an ability to reason and make meaningful choices and he [was] of a maturity and sophistication appropriate for an adult proceeding." Appellant points to conflicting evidence in the record of his immaturity [10] and argues that the evidence does not clearly and convincingly support the certification order. Under the applicable standard of review, we accord the court's findings a presumption of correctness. *In re R.W.*, 717 P.2d 258, 259 (Utah 1986). The fact that appellant calls our attention to conflicting evidence concerning R.R.D.'s maturity means little when there is other evidence in the record to support the court's determination. *Id.* We find that there was clear and convincing evidence of R.R.D.'s maturity which supports the court's decision to certify.

### 4. Record and Previous History

■ The juvenile court found that R.R.D.'s delinquent history was extensive.

That history consisted of six felony convictions, including sexual abuse of a step-sister, and several lesser infractions. Most of the offenses were committed against family members, foster parents, or others close to R.R.D. The six felony offenses occurred in five separate episodes over a three-year period and each episode was followed by some type of confinement or rehabilitative effort. The court noted that R.R.D. appeared to respond positively to the rehabilitative efforts in the short term but ultimately his criminal behavior had not decreased. The court also expressed concern over the way R.R.D. might treat strangers when he was willing to victimize those close to him. All of these considerations are pertinent to the review of R.R.D.'s record.

Defense counsel introduced evidence which compared R.R.D.'s criminal record with the records of other youths within the juvenile court system. He argued against certification because R.R.D.'s record is not as lengthy or grave as that of other youths who remained in the juvenile system. Nothing in the certification statute requires the court to disregard or minimize a particular youth's own record simply because other youths within the juvenile system have worse records.[11] It is undisputed that R.R.D. has an extensive history of criminal activity spanning over three years and involving several different episodes. We agree that R.R.D.'s record weighed in favor of certification in this case.

### 5. Likelihood of Rehabilitation in the Juvenile Court System

■ The court noted that the juvenile court system offered some hope of rehabili-

10. To support his position, defense counsel calls our attention to testimony in the record that R.R.D. was not "criminally sophisticated." Although this evidence has some bearing on R.R.D.'s maturity, we do not believe the maturity factor is limited to "criminal sophistication" but allows the court to consider the general maturity of the juvenile. It is obvious from the court's findings that it found R.R.D. to be sufficiently mature for certification to the adult system. This conclusion was not erroneous.

11. The comparative evidence submitted by R.R.D. was minimally helpful to the court because it only focused on one aspect of the certi-

fication considerations—the juvenile's record. It did not compare R.R.D. with the other youths in regard to other factors, such as maturity and prospects for rehabilitation. Moreover, the evidence, even as it related to R.R.D.'s record, lacked the detail necessary to make it truly helpful. One example of this deficiency was the failure to state the number of episodes in which the other youths' offenses had occurred. Another is the failure to identify who among the other youths had been the subject of certification proceedings. Finally, the evidence did not include comparative evidence concerning other youths who had been certified to the district court.

tation for R.R.D. However, the court found the likelihood of rehabilitation to be questionable for several reasons. First, R.R.D. would remain in the juvenile system for a maximum of three-years' time, and possibly less depending upon the Youth Parole Board. Second, the court noted that R.R.D. had received treatment in nearly every program offered by the Youth Corrections system and that these programs had produced little long-term impact on R.R.D.'s behavior.[12] R.R.D. had committed offenses after, and often during, each prior rehabilitative effort. The court concluded that the interest in protecting society outweighed the possibility that R.R.D. could be rehabilitated in the juvenile court system. The court is entitled to weigh these interests and certify a case if it finds certification to be in the best interests of the public. *See In re Schreuder*, 649 P.2d 19, 25 (Utah 1982).

### Summary

The juvenile court carefully considered all of the factors in § 78–3a–25(2). It appropriately based its decision upon five of those factors. It concluded that "it is in the best interests of the juvenile defendant to answer for his acts to an adult court, and that this is in any event in the best interests of the public." After reviewing the court's findings, which are supported by adequate evidence, we are persuaded that the decision was appropriate.

### EXCLUSION OF COMPARATIVE EVIDENCE

■ At the certification hearing, R.R.D. offered the testimony of a regional administrator for Youth Corrections to show that the average youth in secure confinement had committed more offenses than R.R.D. The court heard the statistical evidence but concluded that the evidence was

an invalid basis for determining appropriateness of a defendant for certification. The protection of society is not hinged upon whether an offender is as serious as some other offender(s), but upon determination of appropriate treatment or punishment in light of what the defendant did or did not do.

On appeal, R.R.D. argues that "it was reversible error to exclude from consideration ... comparison records of other youth within Youth Corrections."

Trial courts are given great discretion to determine the relevance and weight of submitted evidence because of their competence in judging the exigencies of a particular case. *Terry v. Zions Coop. Mercantile Inst.*, 605 P.2d 314, 322–23 (Utah 1979), *overruled on other grounds, McFarland v. Skaggs Cos., Inc.*, 678 P.2d 298 (Utah 1984). Consequently, a court's determinations in this regard will not be reversed unless it is shown that there was an abuse of that discretion. *Id.* at 323. *See also Martin v. Safeway Stores Inc.*, 565 P.2d 1139, 1141 (Utah 1977); *Bambrough v. Bethers*, 552 P.2d 1286, 1290 (Utah 1976); *In re R.D.S.*, 777 P.2d 532, 535 (Utah Ct. App.1989). We do not believe that R.R.D. has shown such an abuse in this case.

Although appropriate comparative evidence might have some persuasive effect on a court in its determination of whether or not to certify a matter to the district court, § 78–3a–25 does not require the court to consider such evidence. Section 78–3a–25(2)(e) only requires the court to look at the juvenile's record and previous history; it does not require the court to compare that record with other juveniles.[13] It was within the court's discretion to determine from the facts before it that R.R.D. should be certified without reference to the comparative evidence which

---

**12.** R.R.D. argues that his current performance in a rehabilitative facility is excellent and demonstrates that the juvenile system could rehabilitate him. However, the court noted that on several prior occasions R.R.D. had received positive diagnoses during rehabilitation and had

thereafter continued his criminal behavior upon release from those programs.

**13.** Even if the court were required to look at comparative evidence, the evidence in this case

was offered.[14]

## CONCLUSION

The juvenile court appropriately certified R.R.D. to the district court in view of its findings, which we conclude are based upon clear and convincing evidence. We therefore affirm.

BILLINGS and GREENWOOD, JJ., concur.

might have been more misleading than helpful. *See* note 8, *supra*.

**14.** We reiterate the fact that the juvenile court can certify a matter based upon any one of the factors in § 78–3a–25(2). *See* § 78–3a–25(4). The certification decision in this case was also premised on the seriousness of the offense, the maturity of R.R.D., and the likelihood of rehabilitation, factors for which the comparative evidence would have been relatively meaningless in any event.